### MALICKE *v.* MILAN.

1. WITNESSES—CROSS-EXAMINATION—SCOPE—DISCRETION OF COURT.
    The latitude to be allowed on cross-examination is largely within the discretion of the trial court and unless abused, its exercise is not the subject of review.

2. SAME—CROSS-EXAMINATION—CREDIBILITY.
    The party having the right to cross-examine has a right to draw out from the witness and lay before the jury anything tending or which may tend to contradict, weaken, modify or explain the testimony of the witness on direct examination or which tends or may tend to elucidate the testimony or affect the credibility of the witness.

3. SAME—CROSS-EXAMINATION—IRRELEVANT MATTERS.
    A witness may not be cross-examined as to any facts which, if admitted, would not only be collateral but wholly irrelevant to the matter in issue and which would in no way affect his credit, nor can a witness be cross-examined as to an irrelevant matter in order to contradict him and which is of such a character as would be likely to be misapplied by the jury.

4. COVENANTS—RACE RESTRICTIONS—COLOR OF DEFENDANT—CROSS-EXAMINATION—BOUNDARY OF SUBDIVISION.
    In suit to enforce restriction against use of some lots in a subdivision by others than Caucasians, where plaintiffs' witness

Restraints in conveyances enforcing racial segregation, invalid, see 4 Restatement, Property, § 437, comment c.

was examined as to color of one of the defendants it was not error to refuse to permit defendants to cross-examine such witness as to whether or not she knew the western boundary of the subdivision since testimony relating thereto was not material to the issues involved.

5. SAME—BUILDING RESTRICTIONS—PROPERTY.

Building restrictions are private property, an interest in real, estate in the nature of an easement, go with the land, and are a property right of value, which cannot be taken for the public use without due process of law and compensation therefor.

6. SAME—RECIPROCAL NEGATIVE EASEMENTS.

Reciprocal negative easements constitute equitable interests or property rights in each lot for the benefit of and appurtenant to each other lot covered by the same restrictions, at least when the instrument creating them evidences the purpose that they shall run with the land and not be purely personal.

7. SAME—NOTICE TO PURCHASERS.

Building restrictions unknown to the purchaser constitute a breach of the covenant against incumbrances.

8. SAME—STATUTE OF FRAUDS.

A building restriction is within a statute of frauds requiring conveyance of equitable as well as of legal interests in land to be evidenced by written instruments.

9. SAME—RECIPROCAL NEGATIVE EASEMENTS—RUNNING WITH LAND.

Reciprocal negative easements run with the land sold by virtue of express fastening and abide with the land retained until loosened by expiration of its period of service or by events working its destruction.

10. SAME—RECIPROCAL NEGATIVE EASEMENTS.

Reciprocal negative easements are not personal to owners but operate upon use of the land by any owner having actual or constructive notice thereof, passing benefits and carrying obligations to all purchasers of land subject to affirmative or negative mandates and originate for mutual benefit and exist with vigor sufficient to work their ends.

11. SAME—RECORDING—RACE RESTRICTIONS—CONVEYANCES.

Restrictions against use of property by others than Caucasians are within the definition of a ''conveyance'' as that term is used in the recording acts and, as such, are entitled to be recorded (3 Comp. Laws 1929, §§ 13309, 13372).

12. SAME—RACE RESTRICTIONS—PUBLIC POLICY.

Restrictions against use of property by others than Caucasians are not covenants contrary to the public policy of this State.

13. SAME—ENACTMENT OF STATUTES—COURTS—LEGISLATIVE POWER —INITIATIVE.

A restriction against use of property by others than Caucasians is not a law enacted by the court, and, since courts do not enact laws, such restriction is not violative of the provision of the Constitution restricting enactment by the initiative that could not have been enacted by the legislature (Const. 1908, art. 5, § 1).

14. SAME—RACE RESTRICTIONS—DUE PROCESS.

Covenants restricting use of property to Caucasians are not contrary to the due process clauses of the Federal and State Constitutions (U. S. Const. am. 14; Mich. Const. 1908, art. 2, § 16).

ON MOTION FOR REHEARING.

15. CONSTITUTIONAL LAW—ENFORCEMENT OF COVENANT RESTRICTING USE OR OCCUPANCY TO CAUCASIANS—EQUAL PROTECTION.

Enforcement of covenant restricting use or occupancy of realty to Caucasians constitutes to non-Caucasians a denial of the equal protection of the laws guaranteed by the Fourteenth Amendment to the Constitution of the United States.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted October 8, 1947. (Docket No. 32, Calendar No. 43,823.) Decided January 5, 1948. Rehearing denied May 10, 1948.

Bill by Joseph Malicke and others against John T. Milan and wife to enforce use restriction. Decree for plaintiffs. Defendants appeal. Affirmed. Reversed on denial of motion for rehearing.

*Blaine & Dombrowski,* for plaintiffs.

*Willis M. Graves* and *Francis M. Dent,* for defendants.

SHARPE, J. This is a suit to enforce a racial restriction agreement which reads in part:

"That we nor either of us will let, lease or rent any part of said subdivision for occupancy by any person or persons not of the Caucasian race, and that we nor either of us will in any way permit or suffer any part of said subdivision to be occupied by any person or persons not of the Caucasian race;

"It being the intention of the parties hereto to restrict the property now owned in the said subdivision, by the parties hereto, to occupancy by persons of the Caucasian race exclusively."

Plaintiffs Joseph Malicke and Stella Malicke, his wife, are the record title holders of land in the city of Detroit described as lot No. 242 of Dovercourt Park Subdivision. Plaintiffs Albert Szaradowski and Stanislawa Szaradowski, his wife, are the record title holders of lot No. 128 in the above subdivision. Plaintiff Home Owners Improvement Association is a Michigan nonprofit corporation consisting of a great number of record title holders and residents of the above subdivision.

On September 29, 1939, a number of owners of lots in the subdivision entered into a reciprocal restriction agreement which was recorded in the office of the register of deeds for Wayne county, Michigan, on January 17, 1940, and reads as follows:

"Know all men by these presents that we the undersigned and each of us, being the owners of one or more lots in the 'Dovercourt Park Subdivision of part of the southeast ¼ of section 4, town 2 south, range 11 east, Springwells township (now city of Detroit) Wayne county, Michigan, according to the plat thereof as recorded in liber 34, at page 89 of plats, Wayne county records,' in consideration of the mutual covenants herein contained and for the purpose of making and maintaining said subdivision as a desirable residential and business area for persons of the Caucasian race, do hereby agree to and with each other for ourselves, and for our and each of our heirs, executors, administrators and assigns that we nor either of us will let, lease or rent any part of said subdivision for occupancy by any person or persons not of the Caucasian race, and that we nor either of us will in any way permit or suffer any part of said subdivision to be occupied by any person or persons not of the Caucasian race;

"It being the intention of the parties hereto to restrict the property now owned in the said subdivision, by the parties hereto, to occupancy by persons of the Caucasian race exclusively.

"It is also mutually agreed by and between the parties hereto that 'exhibit A' hereto attached and made a part of this restrictive agreement, shows, by lot number, the lot or lots in said subdivision that each of the persons executing this agreement owns, and that said 'exhibit A' shall have the same force and effect for the purpose of this agreement as if the same were written into the body of this agreement."

The above restrictive agreement was signed by plaintiffs Joseph Malicke and wife, Albert Szaradowski and wife, and also by Steve Tomecko and Mary Tomecko, his wife. When the agreement was signed, Steve Tomecko and wife were the owners of lot No. 252 in the above subdivision. On October 23, 1942, Tomecko and wife conveyed the above lot to Michael Jovan and Helen Jovan, his wife, the deed to which was recorded in the office of the register of deeds for Wayne county. On August 18, 1945, Jovan and wife conveyed the above lot to defendants John T. Milan and Nettie L. Milan, his wife, who began occupancy of the property approximately on the date of the sale to them.

On September 29, 1945, plaintiffs filed a bill of complaint in the circuit court of Wayne county alleging that defendant Nettie L. Milan is not of the Caucasian race and that she and her husband are occupying the premises in question contrary to the restrictive agreement. Plaintiffs ask that defendants be enjoined from violating the restrictive agreement. Defendants filed an answer in which they neither admit nor deny that defendant Nettie L. Milan is of the Negro or colored race; they allege that the bill of complaint does not give the court ju-

risdiction to hear and determine the matters alleged in plaintiffs' bill of complaint; that the relief prayed for is contrary to Michigan Constitution 1908, art. 2, § 16; that the restriction against occupancy, based on race, creed or color of the occupant is void under the 14th Amendment to the Federal Constitution; and that the restrictive covenant relied upon by plaintiffs is against the public policy of the State of Michigan.

The cause came on for trial and a decree was entered holding that defendant Nettie L. Milan is a colored person of the Negro race; that the property owned and occupied by defendants is restricted; and that Nettie L. Milan be enjoined from using or occupying said property.

Defendants appeal and urge that the court erred in holding that cross-examination of a witness is limited to matters brought out on direct examination. In the case at bar a witness was called by plaintiffs and testified as to the color of defendant Nettie L. Milan. Upon cross-examination the witness was asked if she knew the western boundary of the subdivision. Upon objection the court held that the witness could only be cross-examined upon matters about which the witness testified.

The general rule is that the latitude to be allowed on cross-examination is largely within the discretion of the trial court. See *Ritchie* v. *Stenius,* 73 Mich. 563; *Georgia* v. *Bond,* 114 Mich. 196; *Cummings* v. *Detroit United Railway,* 163 Mich. 304.

In *People* v. *Dellabonda,* 265 Mich. 486, 499, we said:

"One of the elementary principles of cross-examination is that the party having the right to cross-examine has a right to draw out from the witness and lay before the jury anything tending or which may tend to contradict, weaken, modify or explain the testimony of the witness on direct exam-

ination or which tends or may tend to elucidate the testimony or affect the credibility of the witness."

In *People* v. *MacCullough,* 281 Mich. 15, 25, we said:

"So far as the cross-examination of a witness relates either to facts at issue or relevant facts, it is a matter of right; but when its object is to ascertain the accuracy or credibility of a witness, its method and duration are subject to the discretion of the trial judge and, unless abused, its exercise is not the subject of review.   *   *   *   A witness may not be cross-examined as to any facts which, if admitted, would not only be collateral but wholly irrelevant to the matter in issue and which would in no way tend to affect his credit, nor can a witness be cross-examined as to an irrelevant matter in order to contradict him.   *   *   *   The latitude of cross-examination should not ordinarily go so far as to permit the introduction of evidence that has no legitimate relation to any of the issues on trial, which can in no way affect the credibility of the witness subject to cross-examination, and which is of such a character as to be likely to be misapplied by the jury."

In the case at bar the boundary of the subdivision was not in issue and testimony relating thereto was not material to the issues involved.  We hold that under such circumstances it was not error to deny the defense the right of cross-examination upon the subject objected to.

It is next urged that the instrument relied upon by plaintiffs could not be legally recorded and thereby provide notice to defendants.

Section 13372, 3 Comp. Laws 1929 (Stat. Ann. § 26.761), provides:

"Every register of deeds shall, upon the payment of his proper fees, record or cause to be recorded, at length, upon the pages of the proper record books in his office   *   *   *   all deeds, mortgages, maps

and instruments or writings authorized by law to be recorded in his office, and left with him for that purpose.''

Section 13309, 3 Comp. Laws 1929 (Stat. Ann. § 26.552), provides:

''The term 'conveyance,' as used in this chapter, shall be construed to embrace every instrument in writing, by which any estate or interest in real estate is created, aliened, mortgaged or assigned; or by which the title to any real estate may be affected in law or equity, except wills, leases for a term not exceeding three years, and executory contracts for the sale or purchase of lands.''

Plaintiffs' urge that under section 13309, *supra,* a racial restriction agreement may be legally recorded as it is within the definition of a ''conveyance'' set forth in the above section.

In *Allen* v. *City of Detroit,* 167 Mich. 464, 473 (36 L. R. A. [N. S.] 890), the Court said:

''Building restrictions are private property, an interest in real estate in the nature of an easement, go with the land, and are a property right of value, which cannot be taken for the public use without due process of law and compensation therefor.      *      *      *

''The contention that the city under its general police power may ignore this building restriction, and erect its fire engine house within the restricted district because it is necessary for the public good and to protect the lives and property of citizens in that locality, is not tenable. When such action deprives the individual of a vested right in property, it goes beyond regulation under police power, and becomes an act of eminent domain governed by the appropriate condemnation laws.''

In *Johnstone* v. *Railway Co.,* 245 Mich. 65 (67 A. L. R. 373), Justice FEAD, in an excellent opinion upon the subject, said:

''This opinion (*Allen* v. *City of Detroit,* 167 Mich. 464 [36 L. R. A. (N. S.) 890]) has been cited with ap-

proval by this and other courts many times, and has been regarded as announcing settled law of the State. Defendants, however, urge that the opinion is not in harmony with authority and principle, and should be overruled. Because of the importance of the question, we will re-examine it.   *   *   *

"There can be no doubt that, if plaintiffs (owners of lots located 66 feet or more from the right of way) have property interests in the lots (not owned by plaintiffs) purchased or condemned by the State, the use of such lots for purposes in violation of the restrictions would work destruction of those interests and be a taking of property in the constitutional sense. So the basic question in the case is whether plaintiffs have such interest..   *   *   *

"Other courts have designated the right created by building restrictions as a negative easement, reciprocal negative easement, property right, equitable interest. in the nature of, or analogous to, an easement or negative easement, and otherwise. Whatever the name, all ·American authorities we have been able to discover, which have attempted definite statement of the effect of building restrictions adopted in furtherance of a general plan, hold that they constitute equitable interests or property rights in each lot for the benefit of and appurtenant to each other lot covered by the same restrictions, at least when the instrument creating them evidences the purpose that they shall run with the land and not be purely personal. (cases)   *   *   *

"As further indication of their character, the courts are in harmony that building restrictions unknown to the purchaser constitute breach of covenant against incumbrances.   *   *   * And in *Sprague* v. *Kimball*, 213 Mass. 380 (100 N. E. 622, 45 L. R. A. [N. S.] 962, Ann. Cas. 1914 A, 431), it was held that a building restriction is within a statute of frauds requiring conveyance of equitable as well as of legal interests in land to be evidenced by written instruments.   *   *   *

"The position of this Court on the effect of a building restriction, originally taken before the

subdivision in bar was platted, has been uniform.
* * *

"In *Sanborn* v. *McLean,* 233 Mich. 227 (60 A. L. R. 1212), Mr. Justice WIEST, denoted its characteristics :

" 'It runs with the land sold by virtue of express fastening and abides with the land retained until loosened by expiration of its period of service or by events working its destruction. It is not personal to owners but operative upon use of the land by any owner having actual or constructive notice thereof. It is an easement passing its benefits and carrying its obligations to all purchasers of land subject to its affirmative or negative mandates. It originates for mutual benefit and exists with vigor sufficient to work its ends.' * * *

"As the right to restrict the use of real estate is an invasion of ownership, it would seem logical that it is done by virtue of a right or interest in such real estate. Holding it an easement is no more than a fair expansion of the category of easements. * * *

"No good cause appears for overruling *Allen* v. *City of Detroit, supra.* The rule there announced is a settled property law of the State, is supported by the weight of authority, and is founded upon principles approved by the practically unanimous judicial opinion of the country."

In the following cases the material parts of the recording statutes there under consideration were identical with section 13309 of the Michigan statutes now under consideration.

In *Boyden* v. *Roberts,* 131 Wis. 659 (111 N. W. 701), the instrument involved was an agreement restricting the use of real estate. The court there said:

"It is not claimed by appellants that record of the agreement would not constitute constructive notice if it were entitled to record, but it is insisted that it was not entitled to record within the recording acts. It is argued that the agreement does not create an

'estate or interest' in land. But the statute goes further than merely providing that only an instrument which creates an 'estate or interest' in land shall be entitled to record. It provides that "every instrument in writing by which any estate or interest in real estate is created, aliened, mortgaged, or assigned, or by which the title to any real estate may be affected in law or equity,' is a 'conveyance' within the meaning of the recording act. Even if it be conceded that the restriction in the agreement does not create 'an estate or interest in real estate' within the meaning of section 2242, [Wisconsin] Stats. (1898), it seems clear under the authorities that the instrument is one by which the title to real estate therein described is 'affected in law or equity.' "

In *Bradley* v. *Walker,* 138 N. Y. 291 (33 N. E. 1079), 12 owners of real estate entered into a mutual agreement with each other in writing to leave an eight-foot strip of land for an open court. They covenanted for themselves and their heirs and assigns that the space in front of the lots should forever remain open, that the covenants be covenants running with the land and with the titles thereto and should be binding upon all and every person who should thereafter become the owner of the lots. An attempt was made to prove the agreement by a transcript of record from the register of deeds office. The court there said:

"The instrument, a copy of which is annexed to the complaint, was a conveyance of real estate within the meaning of the Revised Statutes, where it is provided (1 R. S. 762, § 38), that 'The term "conveyance," as used in this chapter, shall be construed to embrace every instrument in writing by which any estate or interest in real estate is created, aliened, mortgaged or assigned, or by which the title to any real estate may be affected in law or equity, except last wills and testaments, leases for a term

not exceeding three years, and executory contracts for the sale or purchase of lands.'

"The instrument was entitled to be recorded only because it was a conveyance of real estate within the meaning of the statute."

In *Wayt* v. *Patee,* 205 Cal. 46 (269 Pac. 660), a race restriction agreement was under consideration. The court said:

"The further point made by respondents is that the respondents, the Kinchlows (colored), did not have either actual or constructive notice of the restrictions contained in said agreement. In support thereof respondents rely upon section 1213 of the Civil Code, which provides that every conveyance of real property properly and legally recorded is constructive notice to subsequent purchasers of its contents. Respondents contend that the agreement signed by the plaintiffs and the defendants, the Stewarts, containing said restrictions, was not a 'conveyance' of real property. In this we think respondents are in error, as by section 1215 of the Civil Code 'the term 'conveyance' as used in section 1213 of said code embraces every instrument in writing by which an estate in real property is created, aliened, mortgaged, or encumbered, *or by which the title to any real property may be affected,* except wills. This definition of a 'conveyance of real property' is sufficiently comprehensive to include the agreement which is the basis of the present controversy."

In view of the fact that building restrictions are an interest in real estate and as such may be recorded, it also follows that racial restrictions, having been treated in the nature of building restrictions, are within the definition of a "conveyance" as used in section 13309, *supra,* and as such are entitled to be recorded.

It is also urged that race restrictive covenants are contrary to the public policy of this State. Our

holding in *Sipes* v. *McGhee*, 316 Mich. 614, and the cases therein cited is contrary to this contention. We have not been persuaded that our decisions in those cases are erroneous.

It is also urged that the restriction is violative of Michigan Constitution (1908), art. 5, .§ 1, which reads: "No law shall be enacted by the initiative that could not under this constitution be enacted by the legislature." It should be a sufficient answer to this contention to state that courts do not enact laws.

It is also urged that enforcement of a race restriction agreement is contrary to the 14th Amendment to the United States Constitution and article 2, § 16, of the Constitution of Michigan. This claim was decided in *Sipes* v. *McGhee, supra,* to which reference is made. Our holding there is contrary to the claim of appellants. We are not persuaded that the rule laid down in the above cited case should be overruled.

We conclude that the trial court arrived at a correct decision in this case and the decree entered is affirmed, with costs to plaintiffs.

BUSHNELL, C. J., and BOYLES, REID, NORTH, DETH-MERS, BUTZEL, and CARR, JJ., concurred.

## ON MOTION FOR REHEARING.

PER CURIAM. .Rehearing denied for the following reason. The order affirming the decree is set aside for entry of an order here reversing and setting aside the decree in accordance with the opinion of the United States supreme court in *McGhee* v. *Sipes,* 334 U. S. 1, (68 Sup. Ct. 836, 92 L. Ed. —), decided May 3, 1948.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.