Jack EAKMAN and Delilah Eakman, his
wife, Plaintiffs/Appellees,

v.

Michael ROBB and Globe Investments,
Inc., a domestic corporation,
Defendants/Appellants.

Civ. No. 9130.

Supreme Court of North Dakota.

Dec. 31, 1975.

Richard P. Rausch, Bismarck, for defendants and appellants.

Zuger & Bucklin, argued by William P. Zuger, Bismarck, for plaintiffs and appellees.

PAULSON, Judge.

This is an appeal from a judgment of the Burleigh County District Court entered in favor of the plaintiffs Jack Eakman and

Delilah Eakman [hereinafter the "Eakmans"] against the defendants Michael Robb [hereinafter "Robb"] and Globe Investments, Inc. [hereinafter "Globe"], as owners and developers of Glenwood Estates, a residential subdivision consisting of approximately 73 acres of land located south of Bismarck. Basically, this suit involves a dispute concerning the application and interpretation of restrictive covenants governing land use in Glenwood Estates; as well as the conduct of Robb, as an employee of Globe, during all of the times herein mentioned.

The specific lots of the Glenwood Estates Subdivision involved in this action are Lot 3, Block 2, owned by the Eakmans; and Lots 4 and 5, Block 2, owned by Globe and developed by Robb, either personally or through corporations which are not parties to this lawsuit. Certain lots in Glenwood Estates, including the three lots involved in this action, are wooded; but other lots in the subdivision were previously used as farmland and do not contain any trees.

The subdivision was platted in February of 1973, creating 33 lots. At the time of platting, legal title to much of the land in Glenwood Estates, including Lots 3, 4, and 5, in Block 2, was held by Hanlon E. Rhud and Gertrude Rhud. However, Robb and his associate, Robert E. Carufel, were the equitable title holders under a contract for deed dated August 28, 1972, for the purchase of the property from the Rhuds. Robb and Carufel became holders of the legal title on January 11, 1974.

By filing the plat, the Rhuds, Robb, and Carufel imposed certain restrictive covenants on land use in Glenwood Estates. The two covenants pertinent to this suit state:

"6. The property herein conveyed shall not be resubdivided into building lots, nor shall any building be erected on a lot other than as conveyed by the party of the first part.

"10. These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of ten years from the date these covenants are recorded. After which time said covenants shall be automatically extended for successive periods of ten years unless an instrument signed by a majority of the then owners of the lots has been recorded, agreeing to change said covenants in whole or in part."

The Eakmans, prior to the platting of Glenwood Estates, entered into an option agreement for the purchase of Lot 3, Block 2 of the proposed subdivision. Such agreement was the culmination of a series of discussions between the Eakmans and Robb, including informal discussions about the proposed plat and the restrictive covenants to be imposed on land use. By warranty deed on July 30, 1973, the Eakmans obtained the title to Lot 3, Block 2, from Globe. Subsequent thereto, the Eakmans built their house on Lot 3, Block 2 at a cost of between $44,000 and $45,000.

Early in 1974, Robb built homes on Lots 4 and 5 of Block 2. By warranty deed dated May 30, 1974, title to Lots 4 and 5, Block 2 (as well as title to other lots in the subdivision) was transferred to Globe by Robert E. Carufel and Donna M. Carufel, his wife; Michael F. Robb and Zona G. Robb, his wife. Finally, during the fall of 1974, Lots 4 and 5, Block 2, were resubdivided by Robb and Globe, and the construction of houses on the resubdivided portions of Lots 4 and 5, Block 2 was begun. As the result of Robb's actions, this lawsuit was commenced by the Eakmans on October 22, 1974. The Eakmans' complaint alleges five causes of action:

1. Breach of the restrictive covenants,
2. Tortious misrepresentation by Robb,
3. Violation of Burleigh County zoning regulations,
4. Intentional infliction of emotional distress, and
5. Tortious outrage.

After trial to the court, sitting without a jury, the trial judge entered his findings of

fact and conclusions of law, and ordered that judgment in favor of the Eakmans be entered on the causes of action numbered 1 and 2 above. The trial court also dismissed causes of action numbered 3, 4, and 5, as well as dismissing the defendants' counterclaim. Because of the conflicting nature of the evidence, the trial court's findings of fact and conclusions of law are central to our disposition of this appeal. Consequently, they are set forth in their entirety:

## "FINDINGS OF FACT

"1. Michael Robb knowingly violated covenant number 6 of the restrictive covenants conveyed upon the plat of Glenwood Estates as filed with the Register of Deeds for Burleigh County, which covenant prohibits a re-subdivision of platted lots or the construction of buildings upon lots other than as originally platted.

"2. Michael Robb represented to the plaintiffs that all lots in Glenwood Estates would be developed as ultimately set forth upon the filed plat, making such representations as an inducement to the plaintiffs to purchase a lot in Glenwood Estates and the plaintiff relied upon those representations.

"3. Michael Robb proceeded to re-subdivide Lots 4, 5, and 6 of Block 2, Glenwood Estates and to build thereon, knowing that he was thereby violating the representations which he made to the plaintiffs as an inducement to purchase.

"4. The violations both of restrictive covenants and of representations were done by Robb with actual notice of the wrongful nature and in a fraudulent malicious manner in violation of North Dakota Century Code § 32–03–07.

"5. The plaintiffs have not suffered such emotional damage as would entitle them to compensation at law.

"6. The Court's findings of violation of covenant and of fraudulent misrepresentation render moot the plaintiff's claim that their property rights have been violated in a manner tortiously outrageous.

"7. The defendants have not violated the Burleigh County Zoning Ordinance by their activities herein.

"8. Damages at law are not sufficient to compensate the plaintiffs for damage done by the defendants to their property by virtue of re-subdivision of building lots and construction of residental [*sic*] buildings upon re-subdivided lots.

"9. Damages at law will not be sufficient to compensate the plaintiffs if lots within Glenwood Estates should again be re-subdivided or if structures should be built upon re-subdivided lots in the future.

"10. Because of the re-subdivision of lots by the defendants and actions taken by the defendants in contemplation of re-subdivision, a value to the plaintiffs' property, peculiar to the plaintiffs, has been damaged to an extent of not less than One Thousand Five Hundred ($1,500.00) Dollars.

"11. Punitive damages in an amount not less than Four Thousand ($4,000.00) Dollars will be necessary to adequately punish and deter the defendants.

"12. The plaintiffs did not commit trespass, slander or slander of title against either defendant herein.

"13. The actions of Michael Robb on behalf of Globe Investments, Inc., were within the scope of his employment by Globe Investments, Inc., and with the knowledge and ratification of Globe Investments, Inc.

"WHEREFORE THE COURT MAKES THE FOLLOWING:

## "CONCLUSIONS OF LAW

"1. Plaintiffs are entitled to judgment jointly and severally against the defendants in the amount of Five Thousand Five Hundred ($5,500.00) Dollars.

"2. The plaintiffs are entitled to full costs and disbursements incurred in the prosecution.

"3. The plaintiffs are entitled to a judgment of dismissal on the defendants' counter-claim.

"4. It shall be decreed that the defendants shall, with all deliberate speed, remove the structure erected upon the partial building lot described as the E ½ of the North 237 feet of Lot 5, Block 2, Glenwood Estates, returning said partial lot as nearly as possible to its original condition, including filling the excavation on said partial lot, and that the defendants shall, with all deliberate speed, fill the excavation made upon the E ½ of Lot 4, Block 2, Glenwood Estates and return said partial lot as nearly as possible to its prior condition, said decree to run jointly against the defendants.

"5. It shall further be decreed that the defendants are permanently enjoined from re-subdividing lots in Glenwood Estates in any manner other than that shown upon the original plat on file in the office of the Register of Deeds of Burleigh County or from building upon such re-subdivided lots, said decree to run jointly against both defendants."

Robb and Globe, on appeal, specifically challenge findings of fact numbered 1, 2, 3, 4, 8, 9, 10, and 11.

The issues raised on appeal are as follows:

1. Are the restrictive covenants binding on Robb and Globe? and

2. Did the trial court err in its award of actual and punitive damages and in granting a permanent injunction?

Robb and Globe contend that the restrictive covenant prohibiting any resubdivision of platted lots in Glenwood Estates does not apply to resubdivision by Robb or Globe. It is their position that the covenant, as drafted by Robb, was not intended to restrict the activities of the original owners, i. e., Robb and Globe, or either of them.

The terms of the covenant provide that there shall be no resubdivision of the "property herein conveyed", nor shall any building be erected on a lot "other than as conveyed by the party of the first part". It is therefore clear that once there has been a conveyance of the lots in question, the covenant attaches to and runs with the land and prohibits any resubdivision of any such lot or the erection of a building on a tract of land smaller than such lot as originally platted.

The Eakmans contend that the imposition of restrictive covenants by the filing of a plat constitutes a "conveyance", and, therefore, the covenants are binding not only on subsequent grantees but also on Robb and Globe.

The term "conveyance", in the commonly understood sense, generally refers to the transfer of title to real property from one person to another. See 18 C.J.S. Conveyance pp. 91–95. However, the term also has a broader application.

Cases which have considered the definition of the word "conveyance" have usually arisen in disputes over the application of recording Acts. Section 47–19–42, N.D. C.C., provides the definition of the term "conveyance" for purposes of determining which instruments are entitled to recording, stating:

"The term 'conveyance' as used in section 47–19–41 [voiding as to subsequent good faith purchasers every conveyance of real estate not recorded] shall include *every instrument in writing by which any* estate or *interest in real property is created, aliened,* mortgaged, *or encumbered, or by which the title to any real property may be affected,* except a will or power of attorney." [Emphasis supplied.]

In *Northern Pacific Railway Co. v. Advance Realty Co.,* 78 N.W.2d 705, 713 (N.D. 1956), this Court applied the statutory language "or by which the title to any real property may be affected" and stated that a reservation of mineral interests constituted a "conveyance". And in *Putnam v. Broten,* 60 N.D. 97, 232 N.W. 749 (1930), this Court stated that a subordination agree-

ment reversing the order of priority of second and third mortgages was also a "conveyance".

Broad constructions have been placed on the term "conveyance" by courts in California, Montana, and Michigan. In *Barbieri v. Ongaro*, 208 Cal.App.2d 753, 25 Cal.Rptr. 471, 474 (1962), the California District Court of Appeal held that an agreement restricting subdivision of land was "an instrument affecting the title to real property"; hence, a "conveyance" within the statutory definition. West's Ann.Gov.Code § 27280 (34A Cal.Code). In so ruling, the Court of Appeal followed the 1928 decision of the California Supreme Court in *Wayt v. Patee*, 205 Cal. 46, 53, 269 P. 660, 663 (1928), in which it was held that an agreement among landowners restricting land use was a "conveyance" entitled to recording. In *Kosel v. Stone*, 146 Mont. 218, 404 P.2d 894, 897 (1965), the Supreme Court of Montana agreed with the *Wayt* holding, concluding that an agreement limiting certain land to residential use was a "conveyance".

Finally, in *Malicke v. Milan*, 320 Mich. 65, 30 N.W.2d 440, *rev'd on other grounds* 320 Mich. 65, 32 N.W.2d 353 (1948), the Supreme Court of Michigan held that a racial restriction on land use imposed by landowner's agreement was a "conveyance".[1] The Michigan Supreme Court, in *Malicke*, reviewed the history of land use restrictions and reaffirmed that such restrictions are "an interest in real estate in the nature of an easement", and, hence, within the statutory definition of "conveyance". In the instant case, no contention has been made that the restrictive covenants are unconstitutional, and, accordingly, we make no determination on such issue.

We find such decisions persuasive, and conclude that under North Dakota law, imposition of restrictive covenants by the filing of a plat is a "conveyance". Therefore, because the covenants in the instant case

became effective upon a "conveyance" of the property, we hold that such covenants are binding on Robb and Globe.

Furthermore, we also note that most of the property in Glenwood Estates, including Lots 4 and 5 of Block 2, was transferred by warranty deed on May 30, 1974, to Globe Investments, Inc., from the grantors Robert E. Carufel and Donna M. Carufel, his wife, and Michael F. Robb and Zona G. Robb, his wife. Such conveyance occurred prior to the resubdivision of Lots 4 and 5, Block 2, which is contested by the Eakmans in this suit. It is clear that such conveyance, even though it is urged that the filing of the original plat of Glenwood Estates is not a conveyance, operates to impose the restrictive covenants on Globe. Hence, a "conveyance" in the commonly understood sense, had already occurred by the time that Robb and Globe had resubdivided Lots 4 and 5, Block 2, in September and October of 1974. We conclude that the covenants did apply to the land use in question in the instant case and that by resubdividing Lots 4 and 5, Block 2, and by building on such resubdivided parcels of land, Globe and Robb violated the restrictive covenants hereinbefore set forth.

Having determined that Robb and Globe were bound by the restrictive covenants imposed on the land in Glenwood Estates at the time of the filing of the plat and having also concluded that Robb and Globe violated such covenants by resubdividing and building on Lots 4 and 5, Block 2, we must next determine whether or not the trial court erred in awarding actual and punitive damages and in granting a permanent injunction.

Rule 52(a), North Dakota Rules of Civil Procedure, states:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law

1. Such restrictions are now, of course, invalid. *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). Nonetheless, their treatment under property law is analogous to the restrictive covenants being considered in this case.

thereon and direct the entry of the appropriate judgment; and in granting or refusing temporary injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. *Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.* The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)." [Emphasis supplied.]

■ In *Kleinjan v. Knutson*, 207 N.W.2d 247 (N.D.1973), this Court applied Rule 52(a), N.D.R.Civ.P., holding, in paragraphs 1, 2, and 4 of the syllabus:

"1. The trial court's findings of fact are not to be set aside unless clearly erroneous, and due regard must be given to the opportunity of the trial court to judge the credibility of the witnesses.

"2. In determining the sufficiency of the evidence to sustain the trial court's findings, the evidence must be viewed in the light most favorable to the findings.

"4. . . . the trial court's findings . . . [are given] the same weight as a jury verdict . . .. The judge's 'verdict' was not so clearly wrong that no reasonable man could agree to it."

■ We held in *Larson v. Larson*, 234 N.W.2d 861 (N.D.1975), in paragraph 3 of the syllabus:

"3. A finding is 'clearly erroneous' only when, although there is some evidence to support it, the reviewing court

on the entire evidence is left with a definite and firm conviction that a mistake has been made. The mere fact that the appellate court might have viewed the facts differently, if it had been the initial trier of the case, does not entitle it to reverse the lower court."

■ And, in *Sandberg v. Smith*, 234 N.W.2d 917 (N.D.1975), we held, in paragraph 2 of the syllabus:

"2. Questions of fact decided by a trial court upon conflicting evidence are not subject to reexamination by the Supreme Court."

In the instant case, a review of the evidence reveals conflicting testimony on many disputed points. Nevertheless, in viewing the evidence on appeal, we must do so in the light most favorable to the verdict (here, the judge's findings). *Kleinjan v. Knutson, supra,* 207 N.W.2d at 249.

■ Robb and his associates imposed the restrictive covenants prohibiting land resubdivision in Glenwood Estates at the time of the filing of the plat in February of 1973. However, prior to that date, Robb had already induced the Eakmans to purchase their lot, with full knowledge that a primary reason for their interest in Lot 3, Block 2, was its seclusion and that the proposed covenants would prohibit an increase in the density of building in the development. Furthermore, the evidence shows that Robb represented to the Eakmans that the lot size, natural terrain, and density in Glenwood Estates would be protected by the subsequent imposition of restrictive covenants.

It is also clear that there is sufficient evidence to support the trial court's finding that Robb knowingly violated the restrictive covenants in a fraudulent, malicious manner. The evidence shows the following chronology of events from the time that construction started on Lots 4 and 5, Block 2, until the Eakmans commenced this suit:

| Date | Event |
|---|---|
| Sept. 16–17 | Clearing trees on E ½ of Lot 5 |
| Sept. 17 | Telephone conversation between Robb & Eakman |
| Sept. 18 | Letter from Robb's attorney to Delilah Eakman |
| Sept. 19 | Basement footings placed on E ½ of Lot 5 |
| Sept. 24 | Basement walls placed on E ½ of Lot 5 |
| Sept. 25 | Garage footings placed on E ½ of Lot 5 |
| Sept. 27 | Garage walls placed on E ½ of Lot 5 |
| Oct. 1 | Meeting (informal) between Robb and Eakman at a county commissioners' meeting |
| Oct. 3 | Letter from Eakmans' attorney to Robb's attorney concerning covenant violation |
| Oct. 4 | Meeting (informal) between Robb and Delilah Eakman in house under construction at Glenwood Estates |
| Oct. 7 | Framing begun on 3 walls of house on E ½ of Lot 5 |
| Oct. 7 | Robb & Eakman again met after a Planning Commission meeting |
| Oct. 8 | Framing continues, rafter added, on house on E ½ of Lot 5 |
| Oct. 9 | Telephone conversation between Eakmans' attorney and Robb's attorney regarding alleged covenant violations |
| Oct. 9 | Letter dated Oct. 7 from County Planning official to Eakmans, delivered to Robb's attorney (regarding possible violation of restrictive covenants) |
| Oct. 10 | Telephone conversation between Eakmans' attorney and Robb's attorney, again regarding alleged covenant violations |
| Oct. 10 | Framing continues, roofing added, to house on E ½ of Lot 5 |
| Oct. 11 | House on E ½ of Lot 5 completed |
| Oct. 15 | Telephone conversation between Eakmans' attorney and Robb's attorney |
| Oct. 22 | Summons, Complaint & Lis Pendens filed |
| Nov. 15 | Basement footings poured on E ½ of Lot 4 |

We can only conclude from the summarized chronology that there was ample evidence before the trial court from which it could conclude that Robb knowingly violated the terms of the restrictive covenant and that his actions were not consistent with his assertion of good faith conduct. It appears that his conduct was, in fact, just the opposite during this critical period of time; that every action of Robb's was aimed at improving his financial position rather than at resolving the disputed covenant question *before* any irreparable injury had occurred.

◼ In *Skjonsby v. Ness*, 221 N.W.2d 70 (N.D.1975), this Court held in paragraph 2 of the syllabus:

"2. The function of this court on an appeal asserting excessive damages is to review the ruling of the trial court, and review is limited to a determination of the question of whether the trial court abused its discretion and thereby effected an injustice."

◼ In the instant case, a further review of the evidence substantiates the trial court's award of damages, both actual and punitive, and the granting of the permanent injunction. As the trial court said in its findings of fact:

"8. Damages at law are not sufficient to compensate the plaintiffs for damage done by the defendants to their property by virtue of re-subdivision of building lots and construction of residental [*sic*] buildings upon re-subdivided lots.

"9. Damages at law will not be sufficient to compensate the plaintiffs if lots within Glenwood Estates should again be re-subdivided or if structures should be built upon re-subdivided lots in the future."

Such findings by the trial court are to be sustained unless clearly erroneous. Rule 52(a), N.D.R.Civ.P. The evidence clearly supports the conclusion that there is no effective way, in this case, to return the property to a condition approximating its original state unless the injunction ordering removal of the already-constructed house on the east half of Lot 5, Block 2, and the filling in of the excavation on the east half of Lot 4, Block 2, is sustained by the Court. Robb's claim that such an injunction is unduly harsh fails when the actions of Robb, as summarized above, are examined. He proceeded, at his own risk, with full knowledge that serious questions about the permissibility of the resubdivision and building were being raised by the Eakmans.

◼ The grant or denial of an injunction, whether preliminary or permanent in nature, rests within the sound discretion of the court. *See Brusegaard v. Schroeder*, 199 N.W.2d 921 (N.D.1972) (original application to Supreme Court for stay pending

appeal); and *Brusegaard v. Schroeder*, 201 N.W.2d 899, 906–907 (N.D.1972) (appeal decided on merits). In the instant case, the trial court's Conclusions of Law numbered 3 and 4 on the issue of injunctive relief were supported by its findings of fact. The entry of such injunction was predicated on the trial court's explicit findings that damages at law standing alone were inadequate to compensate for past injury and to compensate the Eakmans if future resubdivision and building should occur. Based upon such detailed findings and conclusions, we cannot say that the judgment granting the injunction was an abuse of the trial court's discretion.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.