Harlan **HEINSOHN,** Plaintiff and Appellant,

v.

**WILLIAM CLAIRMONT, INC.,** a North Dakota corporation, Defendant and Appellee.

Civ. No. 10291.

Supreme Court of North Dakota.

April 21, 1983.

William C. Kelsch (argued), of Kelsch, Kelsch, Bennett, Ruff & Austin, Mandan, for plaintiff and appellant.

James P. Rausch, of Rausch & Rausch, Bismarck, and Patrick A. Conmy (argued), of Lundberg, Conmy, Nodland, Lucas & Schulz, Bismarck, for defendant and appellee.

PAULSON, Justice.

Harlan Heinsohn [Heinsohn] appeals from a summary judgment granted on July 7, 1982, to William Clairmont, Inc. [Clairmont] by the District Court of Burleigh County dismissing with prejudice Heinsohn's claim for relief. We reverse and remand.

In April 1978, Clairmont, as the owner and developer, filed with the Burleigh County Register of Deeds a plat for "Country West II", a new addition to the City of Bismarck. On August 4, 1978, Clairmont prepared and filed "Building Covenants and Restrictions", consisting of restrictive covenants on the usage and development of lots within Country West II. These covenants are designated to "run with the land" and are binding upon all owners of the land within the addition. One of the restrictive covenants states, in pertinent part, as follows:

> "6. On property zoned RLM or R3.5 structures cannot be over two stories in height nor exceed ten density units per acre." [Underscoring omitted.]

On August 8, 1978, Heinsohn, a real estate developer, purchased from Clairmont Lots 8 through 10 and Lots 18 through 22 of Block 10 in Country West II for a price of $115,342.96. In the fall of 1980, Clairmont, which owned Lots 12 through 16 of Block 9, in the addition, began construction of a townhouse on portions of Lots 12, 13, and 14 of that block. The building, part of a development project known as LaVista Villas, was ready for occupancy by the end of January 1981.

In an affidavit, Heinsohn stated that in late March or early April of 1981, he "happened to be in the area" of the Country West II Addition and that he observed for the first time Clairmont's townhouse which is located across the street and south of his

unimproved lots. He stated that he observed that the structure was, in his opinion, three stories in height. Heinsohn further stated in his affidavit that he "was upset about the size of the structure, because he believed that it would adversely affect the value of his lots". Upon reviewing the covenants and observing the two-story height restriction contained therein, Heinsohn referred the matter to his attorney.

On April 16, 1981, Heinsohn, through his attorney, notified Clairmont and alleged that it was in violation of its own restrictive covenant. Clairmont, through its attorney, responded by filing with the register of deeds an amendment to the covenants, which amendment was approved by Clairmont and another party as the majority lot owners in the addition and which, in effect, deleted the two-story height restriction contained in paragraph 6 of the covenants by allowing whatever is permitted under applicable Bismarck zoning ordinances relating to height of dwellings and density of the various units per acre.

Heinsohn then brought suit against Clairmont asking the court in a complaint dated July 16, 1981, for: (1) permanent injunctive relief requiring that the defendant immediately remove, at its own expense, the third story of the townhouse; (2) permanent injunctive relief prohibiting the defendant from building three-story structures in the future; (3) a declaration that the attempted amendment of the covenants was ineffective because it violated the original document; and, in the alternative, (4) an order rescinding the sale of the lots to Heinsohn in exchange for his purchase price plus interest and costs, because the consideration Heinsohn bargained for had failed in part.

Both parties moved for summary judgment. In an order granting partial summary judgment, dated January 7, 1982, the district court ruled that Clairmont's attempted amendment of the covenants was void and unenforceable, but that the determination of whether or not the building is a

two-story or a three-story structure is a fact question to be decided by a jury.

Heinsohn then moved for reconsideration and for summary judgment on the ground that whether or not the building constitutes a two-story or a three-story structure in the instant case depends upon which of two different definitions of the word "story" in the Bismarck Code of Ordinances applies,[1] and that, therefore, such determination is a question of law for the court. The differences between the two conflicting ordinances are essentially the points at which the measurements are taken and the allowable distances between floors.

Between the two hearings on the motions for summary judgment, Clairmont piled soil around the structure in an apparent attempt to raise the average surrounding grade level to meet the measurement requirements of the ordinance definitions and to thus qualify the building as a two-story structure. Also, Clairmont once again attempted to amend the restrictive covenant by eliminating any reference to the term "story" in the document.

Heinsohn submitted affidavits of Alan W. Erickson, a registered land surveyor for Ulteig Engineers, Inc., who reported the measurements he obtained as a result of surveys conducted of the property in question, both before and after Clairmont's embankment work. A detailed drawing showing the ground elevation before and after the embankment was altered around the building, along with the distances to the ceiling and first floor level, was also submitted by Heinsohn. Clairmont, however, offered no evidence to dispute the accuracy of the measurements submitted by Heinsohn.

The court initially determined that Clairmont's second attempt to modify the covenant was valid, but was not effective until the expiration of the primary term of 30 years, and, thus, the issue between the parties was not rendered moot. The court also determined that summary judgment was

---

1. The "Building Covenants and Restrictions" do not contain a definition of the term "story".

Therefore, the district court turned to the applicable statutory definitions.

appropriate because Clairmont offered no evidence to contradict Heinsohn's statistics and measurements. The court then proceeded to apply the various post-embankment and pre-embankment measurements to the two conflicting ordinances, the result being that under either ordinance, and under either pre-embankment or post-embankment figures, the building actually qualified as a three-story, rather than a two-story structure.[2] The court further determined that because Heinsohn requested only equitable relief, it was proper for Clairmont to attempt curative action so as to place itself within the terms of the restrictive covenant, and that, therefore, the applicable measurements in the case were those made following the embankment work.

The result of all of this is that Clairmont's building is a three-story structure, rather than a two-story structure, by either 0.73 or 0.59 feet.

However, in its order dated June 24, 1982, the district court stated that:

" . . . the post-embankment measurements under the UBC [Uniform Building Code] resulting in this floor level being 0.73 feet too high and also the post-embankment definition of 'story' as found in the zoning ordinance which results in this level being 0.59 feet too high would compel this court to find the excess in either case to be *de minimus.* On that basis the court would also rule in favor of the defendant."

The district court denied Heinsohn's motion for summary judgment and entered summary judgment dismissing with prejudice Heinsohn's complaint on July 7, 1982. Heinsohn appeals.

Heinsohn raises several issues in his appeal. We believe that the following issue is dispositive of this appeal, making it unnecessary to reach the other issues: whether or not the doctrine of *de minimis non curat lex* is applicable to a situation in which there has been an intentional and knowing violation of a restrictive covenant of the type involved in the instant case.

The doctrine of *de minimis non curat lex* is codified as a maxim of jurisprudence in § 31–11–05(24) of the North Dakota Century Code, which provides that "The law disregards trifles." In 1 Am.Jur.2d *Actions* § 67 (1962), it is stated that:

"While the existence of a cause of action does not usually depend upon the extent of the recovery, under the maxim, '*de minimis non curat lex*'—the law does not concern itself with trifles—a court of general original jurisdiction may refuse to take jurisdiction of an action based upon a wrong which constitutes only a trifling invasion of the plaintiff's rights or results only in trifling damage. The rule is applicable in equity as in law. The maxim is one of necessity, but furnishes no positive rule of duty, and it is rarely to be applied in the administration of justice."

While the doctrine of *de minimis non curat lex* may be properly applied in certain situations, we believe that it has no application in situations in which there has been an intentional, knowing, or willful invasion of the real property rights of another. Most courts follow this rule. *See, e.g., Leffingwell v. Glendenning,* 218 Ark. 767, 238 S.W.2d 942, 943–944 (1951); *Campbell v. Cottelle,* 38 R.I. 320, 95 A. 665, 666 (1915); *Arnold v. Melani,* 75 Wash.2d 143, 449 P.2d 800, 804 (1968); 1 Am.Jur.2d *Actions* § 67 (1962); 1 C.J.S. *Actions* § 20 (1936); Annot., 44 A.L.R. 168, 169 (1926). *Cf. Beaty v. Gordon,* 236 Ark. 50, 364 S.W.2d 311, 313 (1963); *Kelton v. Saylor,* 211 Ky. 739, 277 S.W. 1026, 1027 (1925); 1 G. Thompson, Commentaries on the Modern Law of Real Property § 1, at 8 (1980).

---

**2.** The district court determined that the definition of "story" found in § 420 of the Uniform Building Code [adopted by reference in § 9–10 of the Code of Ordinances of the City of Bismarck], rather than the definition "story" found in § 15.0202 of Appendix A of the Code of Ordinances of the City of Bismarck, applied in the instant case. However, because the building technically qualifies as a three-story structure under either definition, it is not necessary for us to decide which definition governs.

■ This proposition is in accord with decisions of our court indicating that the equitable principle of relative hardships is not to be considered when property rights have been willfully or negligently violated. *See Eakman v. Robb,* 237 N.W.2d 423, 429–430 (N.D.1975); *Graven v. Backus,* 163 N.W.2d 320, 325–326 (N.D.1968); *Owenson v. Bradley,* 50 N.D. 741, 197 N.W. 885, 887–889 (1924). *See also Sandstrom v. Larsen,* 59 Hawaii 491, 583 P.2d 971, 978–979 (1978); *Gladstone v. Gregory,* 95 Nev. 474, 596 P.2d 491, 495 (1979); *McDonough v. W.W. Snow Construction Co., Inc.,* 131 Vt. 436, 306 A.2d 119, 122 (1973); Dobbs, Law of Remedies § 5.6, at 355 (1973). *See generally* Annot., 1 A.L.R. 4th 1021 (1980).

■ In *Eakman v. Robb,* 237 N.W.2d 423, 428 (N.D.1975), our court, in holding that under North Dakota law the imposition of restrictive covenants by the filing of a plat is a "conveyance", found persuasive the reasoning of the Michigan Supreme Court in *Malicke v. Milan,* 320 Mich. 65, 30 N.W.2d 440, 442, *rev'd on other grounds,* 320 Mich. 65, 32 N.W.2d 353 (1948), wherein the court stated that land use restrictions are "an interest in real estate in the nature of an easement". The "Building Covenants and Restrictions" filed in the instant case with the Burleigh County Register of Deeds further evince the proprietary interest which was created. This document provides, in part,[3] that:

"9. The covenants herein shall and are to run with the land and be binding on all of the parties hereto, and on all owners of any portion of the premises and all persons claiming under them. Any transfer of title by deed or otherwise, or of possession by lease or otherwise, shall subject the owner or occupant to the easements and protective covenants or restrictions herein contained and contained in the Plat of said subdivision, and each person receiving title or possession to the premises, or any part thereof, shall covenant for himself, his heirs and assigns, that he, his heirs and assigns, for the period of time provided for the existence of said covenants will faithfully observe said several covenants, and each of them; and if said parties, or any person claiming under them, shall at any time violate or attempt to violate or shall omit to perform or observe any of the foregoing restrictions, it shall be lawful for any person owning a lot within the subdivision which is subject to the same restriction and with respect to which the default is made, to institute and prosecute appropriate proceedings at law or in equity for the wrong done or attempted to be done." [Underscoring omitted.]

We conclude that the building restriction at issue in the present case constitutes a valuable property right. As such, the doctrine of *de minimis non curat lex* does not apply when the violation of the restrictive covenant was intentional, knowing, or willful in nature.

■ The question now becomes whether or not any genuine issues of material fact exist regarding whether or not Clairmont intentionally, knowingly, or willfully violated the restrictive covenant in this case. In *Krueger v. St. Joseph's Hospital,*

---

**3.** The "Building Covenants and Restrictions" also provide, in pertinent part, as follows:

"THEREFORE, there are created, declared and established in Country West II Addition to the City of Bismarck, North Dakota, the following restrictive covenants, easements, reservations and requirements upon the lands within such subdivision, which restrictive covenants, easements, reservations and requirements shall run with the land and remain in full force and effect upon all parties and all persons claiming under them for a period of thirty years from the date the covenants are recorded, after which time said covenants shall automatically be extended for successive periods of ten years, unless an instrument signed by a majority of the then owners of the lots has been recorded agreeing to change said covenants in whole or in part. Any violation, attempt to violate, or omission to perform any of the conditions and restrictions as hereinafter set forth shall entitle, and it shall be lawful for, any person owning real estate in said addition, which is subject to the same restriction or condition in respect to which the default is made, to institute and prosecute appropriate proceedings at law or in equity for the wrong done or attempted." [Underscoring omitted.]

305 N.W.2d 18, 22 (N.D.1981), this court stated that "Summary judgment is not appropriate if . . . reasonable differences of opinion exist as to the inferences to be drawn from undisputed facts." Furthermore, summary judgment is not appropriate whenever a finding of fact must be made. *Albers v. NoDAK Racing Club, Inc.,* 256 N.W.2d 355, 358 (N.D.1977). The determination of whether or not a party has knowingly violated the terms of a restrictive covenant is a finding of fact. *See Eakman v. Robb,* 237 N.W.2d 423, 429–430 (N.D.1975). Therefore, a genuine issue of fact exists which prevented the district court from granting summary judgment.

Accordingly, the summary judgment is reversed and the case is remanded.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.