**Clyde ERIKSEN, Plaintiff and Appellee,**

v.

**Kenneth A. BOYER and Stanley Home Products, Inc., a foreign corporation, Defendants and Appellants.**

**Civ. No. 9037.**

Supreme Court of North Dakota.

Dec. 30, 1974.

■■■■■■■■■

Vogel, Vogel, Brantner & Kelly, Fargo, for plaintiff and appellee.

Tenneson, Serkland, Lundberg & Erickson, Fargo, for defendants and appellants.

VOGEL, Judge.

Defendants-appellants, Kenneth A. Boyer and Stanley Home Products, Inc., appeal from an order of the district court of Barnes County denying their motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Boyer was an employee of Stanley and engaged in Stanley's business at the time of the accident which resulted in the action and subsequent appeal. We will refer to them jointly hereinafter as Boyer. The vehicle Boyer was driving was a 2-ton Chevrolet truck with a 16-foot van. It was involved in a collision with a 1969 Oldsmobile Cutlass driven by the plaintiff, Eriksen, on September 30, 1970. The accident occurred when Boyer was making a left turn into a farm driveway while Eriksen was attempting to pass the truck. The weather and road conditions were excellent, there was no nearby traffic, and no apparent explanation for the collision other than driver error. There is disputed testimony as to speed, but no claim of violation of the speed limit. There is also disputed testimony as to whether Boyer signaled for a left turn and as to the rapidity of his deceleration prior to commencing the turn. Eriksen admits he did not sound his horn.

Eriksen suffered, among other injuries, a broken leg. After hospitalization, he was released on October 21, 1970, to go home on crutches with instructions not to use his injured right leg. On October 26, 1970, after getting around on the good leg and the crutches, he attempted to sit down on a davenport in his trailer home. His left leg, apparently tired by unusual activity, buckled and Eriksen fell, re-injuring his right leg. Further surgery and hospitalization and expense resulted.

After a trial, the jury awarded Eriksen $53,000, inclusive of out-of-pocket expenses of $10,032.95 and lost income of $2,860, and dismissed a counterclaim for property damage by Boyer. Boyer moved for judgment notwithstanding the verdict or for a new trial, the motion was denied, and this appeal followed.

■■■■ Boyer claims error in several evidentiary rulings by the trial court. The first assertion is that the court erred in sustaining an objection to questions directed to Gerald Harrington, an eyewitness driver approaching from the opposite direction, who saw the collision from one-eighth to one-fourth mile away. On cross-examination, he was asked whether he was concerned about whether the truck could have safely made the turn into the intersection in front of his car if the collision had not occurred. An objection that the question called for a conclusion was sustained. The second assertion relates to cross-examination of Eriksen, during which he was asked if he was satisfied that the doctor who treated him for the first injury has "performed the best medical practice that he was capable of." An objection that this called for a medical opinion was sustained. The third allegation of error arises from interrogation of Boyer on direct examination as to why he didn't see the vehicle behind him, after having stated that he looked twice in the rear-view mirror and saw nothing. An objection to the question on the ground that it was conjectural and speculative was sustained, but the court said that the witness could state the circumstances and the jury would determine why he didn't see the vehicle. Similar rulings were made when Boyer's attorney asked him if in the past he had heard horns when people passed his truck and whether he could hear the horn of a vehicle behind him while he was in the cab of the truck. The court, pointing out that Eriksen admitted not honking the horn, sustained the objection.

Boyer also objects to the overruling of certain objections made on his behalf to hypothetical questions to physicians as to whether Eriksen's injured right leg would be weak and unsteady and whether the original accident was a competent producing cause of the injuries found after the second accident.

We find all of the rulings outlined above to have been well within the discretion of the trial court.

■■■ Boyer maintained consistently throughout the trial that the second accident, the fall in the trailer home, was due to the negligence of Eriksen as a matter of law, and that all evidence as to the second accident and the resulting injuries and damages therefrom were inadmissible, and, if admitted, should be stricken. He likewise objected to instructions permitting recovery of the damages resulting from the second accident.

The instruction given on this point is as follows:

"You are instructed that if a person has been injured, as shown by the evidence in this case, and if you find from the evidence that as a result of said injury he was in a weakened physical condition and disability which subjects him, while he is exercising due care, to another mishap, he may recover if the subsequent mishap was one normally to be expected in view of his condition, and the further injury that he sustains as a result of the subsequent mishap may be added to the original injury. If on the other hand the subsequent mishap or second injury was the result of negligence of such person and is the result of said person's lack of due care, the defendant may not be charged with such additional injury so received."

Although the doctrine could be stated more concisely, the instruction is a correct statement of the law. Restatement of the Law, Torts, Second, Sec. 460; Stephenson v. F. W. Woolworth Co., 277 Minn. 190, 152 N.W.2d 138, 31 A.L.R.2d 990 (1967);

Squires v. Reynolds, 125 Conn. 366, 5 A.2d 877 (1939). And see Polucha v. Landes, 60 N.D. 159, 233 N.W. 264 (1930).

The question of whether Eriksen was contributorily negligent in the happening of the second accident, as in the first, was for the jury. Muhlhauser v. Archie Campbell Construction Co., 160 N.W.2d 524 (N.D. 1968).

■■■ The next contention of Boyer is that the court erred in instructing the jury as to statutory provisions relating to the sounding of horns. There are two such statutory provisions, and both were read to the jury.

"The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle. When not within a business or residential district, the driver of an overtaking vehicle shall give audible warning with his horn or other warning device before passing or attempting to pass a vehicle proceeding in the same direction." Sec. 39–10–11, N.D.C.C.

We have quoted the above section as it read at the time of the accident in question. It has since been amended.

The second statutory provision in effect at the time and read to the jury is as follows:

"Every motor vehicle when operated upon a highway shall be equipped with a horn in good working order and capable of emitting sound audible under normal conditions from a distance of not less than two hundred feet, but no horn or other warning device shall emit an unreasonably loud or harsh sound or a whistle. The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn, but shall not otherwise use such horn when upon a highway." Sec. 39–21–36, N.D.C.C.

Boyer claims that the two statutes are inconsistent and that only Section 39–10–11 should have been read to the jury. We disagree.

While the two statutes apparently are inconsistent, we believe they can be reconciled by holding that they required, first, that the horn must be sounded when reasonably necessary to insure safe operation, and, second, that the sounding of the horn is required in all cases when passing. Incidentally, the subsequent amendment of Section 39–10–11 has removed the apparent inconsistency by eliminating the requirement that the horn always be sounded when passing.

We find that the court properly instructed the jury under former Sections 39–10–11 and 39–21–36, N.D.C.C. We note in passing that our prior decisions have held that it may be evidence of negligence under some circumstances to sound a horn [Hausken v. Coman, 66 N.D. 633, 268 N.W. 430 (1936)], and to fail to sound a horn [Moe v. Kettwig, 68 N.W.2d 853 (N.D.1955)].

Whether it was negligent to fail to sound the horn, and whether the failure to sound the horn was a proximate cause of the accident and contributory negligence, were questions for the jury, and the trial court's instruction that a violation of law was evidence of negligence was a proper statement of the law. Muhlhauser v. Archie Campbell Construction Co., *supra*.

■ Boyer next objects to the court's instructions on contributory negligence and proximate cause on the ground that it is confusing and erroneous to introduce into the concepts of contributory negligence and proximate cause the concept of an intervening cause, especially where no negligence of a third party is alleged. The criticized instructions read:

"Contributory negligence is an affirmative defense, and must be pleaded and proved by the defendant. The defense in this case has pleaded such a defense, and if it proves by a fair preponderance of the evidence, or if the evidence in the case by a fair preponderance thereof shows, that the plaintiff was guilty of contributory negligence which contributed directly, and proximately, as the term 'proximate cause' shall be hereinafter defined, to the injury of which the plaintiff complains, the defense has sustained its burden of proof and plaintiff cannot recover.

. . . . .

"The proximate cause of an injury, within the meaning of the law of negligence and as used in these instructions, is such a cause as operates to produce particular consequences without the intervention of any unforeseen act or acts without which the injury could not have occurred from the alleged negligent act. Or to state the definition more particularly the proximate cause of any injury is that which causes it directly or immediately, or through a natural sequence of events, without the intervention of another unforeseen independent and efficient cause. The fact that an injury would not have happened but for the act does not necessitate the conclusion that such act was a proximate cause of the injury. Where a person is negligent in some respect, and between his negligence and the injury an entirely and unrelated unforeseen cause intervenes, the second cause is generally regarded as the proximate cause and the first as the remote cause. The rule is that whenever a plaintiff's acts show any want of ordinary care under the circumstances contributing as a proximate cause of the injury for which action is brought, plaintiff's right to recover is thereby destroyed. Contributory negligence signifies a want of reasonable care and caution on the part of the person injured, which directly contributes to the injury and which is also one of the proximate causes of the injury.

"The court instructs the jury that not every negligent act will support an action for damages. To constitute actionable negligence there must exist three essential elements, namely:

"1. A duty or obligation on the part of the defendant to protect the plaintiff from injury.

"2. A failure on the part of the defendant to perform the duty.

"3. An injury to the plaintiff resulting proximately, as hereinbefore defined, directly and without any intervening cause, from the failure of the defendant to perform that duty.

"When three elements are brought together they unitedly constitute actionable negligence. If the evidence by a fair preponderance thereof fails to establish any one of these elements, such failure is fatal to plaintiff's cause of action, and the jury must render a verdict for the defendant."

We find no error. While it is possible to instruct as to contributory negligence and proximate cause without referring to contributory negligence as an intervening cause [see NDJI 700], we see no error in the instructions given. According to Prosser on Torts, Fourth Edition, Section 65, page 417,

"The greater number of courts have explained it [contributory negligence] in terms of 'proximate cause,' saying that the plaintiff's negligence is an intervening, or insulating, cause between the defendant's negligence and the result."

While Prosser criticizes this explanation, he also criticizes all other explanations of the meaning of the term "contributory negligence." We find the criticized instruction to be amply clear and unexceptionable.

■ Boyer also criticizes the giving of an instruction on the emergency doctrine, claiming that there was no emergency. But the evidence, considered in a light favorable to the verdict, could lead the jury to believe that Boyer suddenly decelerated and turned without giving a signal of his intention to do so, and thereby confronted Eriksen with a sudden emergency. There was no error. Muhlhauser v. Archie Campbell Construction Co., *supra*.

■ Boyer criticizes the court's failure to use North Dakota Jury Instruction 202, and particularly its failure to use the words ". . . and is not created by his own fault, . . ." contained in NDJI 202. But the language used by the court[1] is so similar to the language of NDJI 202 that it can hardly be called even a paraphrase, and the instruction given by the court includes the words "without negligence on his part" which convey the same meaning as "not created by his own fault."

■ The North Dakota Jury Instructions are advisory only. State v. Jacob, 222 N.W.2d 586 (N.D.1974).

■ Boyer asserts that the court erred in refusing to give a requested instruction to the effect that damages awarded to the plaintiff are not taxable to him as income. We hold that the court was clearly correct in refusing the instruction. We adhere to the majority rule that it is improper to instruct the jury that an award of damages is not subject to income tax and that such tax should not be considered in fixing the amount of damages. Briggs v. Chicago Great Western Ry. Co., 248 Minn. 418, 80 N.W.2d 625 (1957), and cases cited at Note 21. We agree with the statement of the Illinois Supreme Court in Hall v. Chicago & North Western Ry. Co., 5 Ill.2d 135, 151, 125 N.E.2d 77, 86 (1955):

"It is a general principle of law that in the trial of a lawsuit the status of the

1. "A person who, without negligence on his part, is suddenly and unexpectedly confronted with peril arising from either the actual presence or the appearance of imminent danger to himself or to others, is not expected or required to use the same judgment and prudence that is required of him, in the exercise of ordinary care, in calmer and more deliberate moments. If at that moment he does what appears to him to be the best thing to do, and if his choice and manner of action are the same as might have been followed by any ordinarily prudent person under the same conditions, he does all the law requires of him, although, in the light of after-events it should appear a different course would have been better and safer."

parties is immaterial. Thus, what the plaintiff does with an award, or how the defendant acquires the money with which to pay the award, is of no concern to the court or jury. Similarly, whether the plaintiff has to pay a tax on the award is a matter that concerns only the plaintiff and the government. The tortfeasor has no interest in such question. And if the jury were to mitigate the damages of the plaintiff by reason of the income tax exemption accorded him, then the very Congressional intent of the income tax law to give an injured party a tax benefit would be nullified.

.    .    .    .    .

"We are of the opinion that the incident of taxation is not a proper factor for a jury's consideration, imparted either by oral argument or written instruction. It introduces an extraneous subject, giving rise to conjecture and speculation."

■ To this we would only add that the incidence of income tax is no more relevant to the amount of the award ultimately available to the plaintiff than the amount of his contingent attorney fees, if any. If one is to be the subject of a jury instruction, so should the other. We hold that neither is an appropriate subject for jury instruction.

■ Boyer also complains of the court's refusal to give various other instructions requested by him. We have examined the requested instructions and find that their subject matter is adequately covered by instructions actually given. The most serious allegation of error in the instructions arises from a paragraph in the section of the instructions relating to damages which reads as follows:

"If you find that the evidence is evenly balanced, that is, if you find that both the plaintiff and the defendants were equally at fault in causing the damages, if any, and that such joint negligence was the cause of the accident referred to in the complaint, the plaintiff cannot recover on his complaint, and your verdict should be for the defendants for a dismissal of the action."

Standing alone, this instruction is clearly erroneous, principally because of the use of the word "equally," since it introduces the subject of comparative negligence at a time long prior to the adoption of that doctrine in this State by Chapter 78, 1973 Session Laws. However, we are required to read and construe the instructions as a whole. Schollmeyer v. Saxowsky, 211 N.W.2d 377 (N.D.1973); Armstrong v. Miller, 189 N.W.2d 688 (N.D.1971); Leake v. Hagert, 175 N.W.2d 675 (N.D.1970).

As stated, the challenged paragraph is found among instructions relating to damages, and presumably would be taken by the jury to refer to damages.

The portion of the instructions relating to liability contains appropriate language as to negligence, contributory negligence, and proximate cause, some of which language we have quoted herein. The instructions state that:

"The burden of proof is upon the plaintiff to prove by a fair preponderance of the evidence the allegations of the complaint, and that the damages complained of, if any, were due to the negligence and carelessness of the defendants.

"Contributory negligence is an affirmative defense, and must be pleaded and proved by the defendant. The defense in this case has pleaded such a defense, and if it proves by a fair preponderance of the evidence, or if the evidence in the case by a fair preponderance thereof shows, that the plaintiff was guilty of contributory negligence which contributed directly, and proximately, as the term 'proximate cause' shall be hereinafter defined, to the injury of which the plaintiff complains, the defense has sustained its burden of proof and plaintiff cannot recover.

.    .    .    .    .

"The Court instructs the Jury that when the Court uses the term 'burden of

proof,' it means that the party who has the burden of proof must prove his or her claim by a fair preponderance of the evidence.

"By a fair preponderance of the evidence is not meant the greater number of witnesses testifying in regard to any particular fact. It means that the testimony on the part of the party upon whom the burden rests must have a greater weight, and in your opinion a more convincing effect, than the testimony opposed to it. If in your opinion the testimony on any essential point is evenly balanced, then the party on whom the burden rests to prove the same must be deemed to have failed in regard thereto."

We believe the last sentence above quoted explains what the court meant to convey by the criticized language. While the criticized language was inappropriate and incorrect, when we read the instructions as a whole we do not believe that reversible error was committed.

Finally, Boyer asserts that the verdict is excessive and the result of passion and prejudice.

Before we find a verdict excessive, we must find that the amount awarded is so unreasonable and extreme as to indicate passion and prejudice on the part of the jury. Schan v. Howard Sober, Inc., 216 N.W.2d 793 (N.D.1974). As we indicated at the beginning of this opinion, special damages of $12,892.95 were proved, and the jury brought in a verdict for $53,000. We do not mean to imply that there is any necessary connection between the amount of special damages and the amount of recovery allowable, but only that the amount of special damages reduces the amount of the award attributable to pain and suffering, disability, future loss of income, and medical expenses, if any.

Eriksen, because of the injuries he suffered, had to undergo two serious operations. One of them was the rebreaking of the femur by hand and the insertion of plates and screws into the leg. There was testimony that Eriksen, who was only 25 years old at the time of the accident, had a life expectancy of 45.82 years, and had a permanent disability of 20 percent of his right leg resulting from the accident. He testified as to the extent of his pain and suffering. His occupation was that of school principal.

The jury gave the award under appropriate instructions, and the matter was one peculiarly for its determination. The trial court heard the witnesses and observed their demeanor, and denied the motion for a new trial or judgment notwithstanding the verdict. We hold that the trial court did not abuse its discretion.

Affirmed.

ERICKSTAD, C. J., and JOHNSON, PAULSON and KNUDSON, JJ., concur.