NATIONAL FARMERS ORGANIZATION, INC. and National Farmers Organization Members Grain Custodial Account (Iowa Trust), Appellants,

v.

Robert LIAS and Harvey Lias d/b/a Lias Brothers, Appellees.

No. 60767.

Supreme Court of Iowa.

Nov. 22, 1978.

Patrick C. McCormick, Sioux City, for appellants.

David L. Sayre, of McDonald, Sayre & Wittgraf, Cherokee, for appellees.

Considered by REES, P. J., and McCORMICK, ALLBEE, McGIVERIN and LARSON, JJ.

McGIVERIN, Justice.

Plaintiffs, National Farmers Organization, Inc. (N.F.O.) and National Farmers Organization Members Grain Custodial Account (Iowa Trust), filed suit against defendants Lias Brothers alleging breach of contract for failure to deliver corn pursuant to a N.F.O. negotiated contract with Peavey Grain Company. Plaintiffs appeal from a trial court ruling sustaining defendants' motion for directed verdict made at the close of plaintiffs' evidence. We affirm the trial court.

At trial, defendants' motion for directed verdict raised eight grounds, seven of which were sustained by the trial court and five of which are re-urged here in support of the ruling. Two issues raised by defendants, however, are dispositive of the case.

First defendants contend that an N.F.O. membership agreement executed between N.F.O. and Lias Brothers governs subsequent negotiations for commodity sales by N.F.O. in behalf of Lias Brothers. Defendants next contend that the membership agreement contains a condition precedent in respect to grain sale contracts negotiated by N.F.O. with third parties. It is argued this condition precedent has not been satisfied and, therefore, grain sale contracts negotiated by N.F.O. are not binding on defendants.

To understand the contentions of the parties we must examine the facts as shown by the record. In considering the propriety of a motion for directed verdict, this court views the evidence in the light most favorable to the party against whom the motion was made. R.App.P. 14(f)(2).

I. Defendants Robert Lias and Harvey Lias, doing business as Lias Brothers, were members of N.F.O. The parties executed a membership agreement in October, 1971, on a printed form supplied by N.F.O. The agreement authorized N.F.O. to be the agent of defendants for the negotiating of contracts governing the sale or marketing of defendants' farm commodities and was in effect at all material times. The relevant portions of the agreement state:

Article III—Marketing Areas. Section 1—The President and the Board of Directors (of N.F.O.) shall establish marketing areas for each commodity based on area of supply of key markets. . . .

Article VI—Ratification of Marketing Contracts. Section 1—No contract consummated with a processor shall be effective or binding until it has been ratified by a two-thirds vote of members in a marketing area who have signed contracts with the N.F.O. for the commodity, attending a meeting called for that purpose by the Marketing Area Bargaining Committee and has been approved by the Board of Directors of the N.F.O. . . . Section 3—It will be the responsibility of the Marketing Area Bargaining Committee to give at least ten days notice to members who have signed marketing contracts, by first class mail, to the address shown on this contract giving date, time and place of meetings on any issue requiring ratification of N.F.O. members.

Article VII—Marketing Requirements. Section 1—Until such time as a contract has been consummated with the processor for a commodity I own or control in accordance with the provisions of this agreement; or until a marketing procedure has been established for a commodity and ratified in accordance with the terms of this agreement, a member shall be free to market his commodity as he chooses.

Section 2—When a contract has been consummated in accordance with the terms of this agreement covering a member's commodity, and he sells this commodity to a processor other than the one specified by the agreement, the member shall be assessed 10% of the gross sale of the commodity for liquidated damages.

Iowa Trust was an escrow trust established by N.F.O. in 1973 to handle receipts and disbursements relative to commodity sales made by N.F.O. for its members.

On December 10, 1971, and August 1, 1972, N.F.O. and defendants executed documents labeled "Bill of Sale" by which de-fendants agreed that N.F.O. would enter into contracts selling substantial amounts of defendants' corn for them. Under the bills of sale defendants committed to N.F.O. a specified quantity of corn on an approximate delivery schedule for purposes of subsequent negotiation of sale to a buyer. Although the bills of sale stated quantity and approximate delivery schedule, price, which necessarily had to be negotiated by N.F.O. with the ultimate buyer, was left open.

N.F.O. subsequently entered into sale agreements with Peavey Grain Company to sell to Peavey 24,500 bushels of corn which plaintiffs claim defendants had committed to N.F.O. for contract negotiation under the "bills of sale". As each sale agreement was made with Peavey, N.F.O. notified defendants in writing of the sale price per bushel and the quantity that defendants were to deliver to Peavey under the delivery schedule.

N.F.O. made no effort to comply with Article VI of the membership agreement with defendant which required N.F.O.: (a) to call a meeting of the N.F.O. members, after timely notice, in the defendant's marketing area for the purpose of voting on ratification of the contracts N.F.O. negotiated with the processor, Peavey; and (b) to have the sale contracts with the processor approved by the N.F.O. board of directors.

Defendants did not deliver any corn to Peavey or N.F.O. under the above mentioned documents and in no way ratified any agreement with Peavey.

N.F.O. later obtained corn from other N.F.O. members and satisfied the Peavey commitment.

Between the times of negotiation of the contract with Peavey and satisfaction of the contract obligation by N.F.O., the market value of corn almost doubled. N.F.O. and Iowa Trust absorbed the cost differential between the contract price and the market price.

Plaintiffs then filed the present petition against defendants, claiming damages for the difference between the value of the corn when furnished by N.F.O. to Peavey

and the contract price N.F.O. had originally negotiated with Peavey.

II. Plaintiffs contend the bills of sale form the entire contractual basis of this suit and, therefore, failure to comply with the ratification provisions of Article VI of the membership agreement does not constitute non-performance of a condition precedent. Plaintiffs' position in defining the contractual basis of this suit, however, is not tenable.

There appear to be two operative contracts relevant to this action. The membership agreement establishes the contractual relationship whereby plaintiffs act as agent for defendants in negotiation of grain sale contracts in exchange for a membership fee. The contracts executed with Peavey Grain Company constitute separate contracts actually negotiated by N.F.O. as agent for defendants. Plaintiffs, apparently, contend the bills of sale, construed alone, constitute the basis for recovery of the difference between the contract and the market price of the corn delivered to Peavey.

■ Generally, courts may determine the terms of an agreement from a combination of written instruments. See *Reznik v. McKee*, 216 Kan. 659, 534 P.2d 243, 256 (1975); 17 C.J.S. Contracts § 58, at 727. The bills of sale, relied on by plaintiffs as the sole contractual basis of this suit, must be read in conjunction with the membership agreement. The membership agreement, establishing the right of plaintiffs to act as defendants' agent in negotiation of grain sale contracts, provided that "until such time as a contract has been consummated with a processor for a commodity . . . a member shall be free to market his commodity as he chooses." The agreement further specifies in article VII that sale to a third party, after N.F.O. has consummated a grain sale contract, will result in assessment of "10% of the gross sale" for liquidated damages.

■ The bills of sale evidence the commitment, as N.F.O. members, of defendants to make available corn pursuant to the "consummated" contract with Peavey. Defendants did not fulfill this commitment and thereby breached the membership agreement with N.F.O. See Article VII, Section 2 thereof, *supra.*

Since defendants did not make the corn available to N.F.O. to fulfill the Peavey contract, N.F.O. or its members absorbed a substantial loss. Defendants can not be held liable on this contract with Peavey, however. The membership agreement required that contracts "consummated" be ratified and approved by the N.F.O. board of directors before becoming binding on N.F.O. members. Plaintiffs failed, despite the clear language of the membership agreement, to perform the condition precedent of obtaining ratification and approval of the Peavey contract.

■ Conditions precedent "are those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." 3A Corbin on Contracts § 628 at 16 (1960). Compliance by N.F.O. with its own form of membership agreement was a necessary condition precedent to the contract of N.F.O. and Peavey becoming binding on defendants. *Henschel v. Hawkeye Security Ins. Co.*, 178 N.W.2d 409, 417 (Iowa 1970). Under the facts of this case, defendants had no legal obligation to deliver their corn to Peavey or the N.F.O.

Neither party cites or claims that any provisions of the Uniform Commercial Code, Chapter 554, The Code, apply to this case.

Because we find defendants' contentions, above stated, are correct, it is unnecessary to discuss other issues raised by defendants or plaintiffs. Plaintiffs failed to prove a cause of action against defendants.

The trial court was correct in sustaining defendant's motion for directed verdict. This case is affirmed.

AFFIRMED.

All Justices concur.