Laverne BOE et al., Plaintiffs
and Appellees,

v.

NATIONAL FARMER'S ORGANIZATION, INCORPORATED, an Iowa Nonprofit Corporation, Oren Lee Staley, its President, and its other Officers, Representatives and Agents, Defendants and Appellants,

and

McLean County, North Dakota NFO Organization, Alfonse Freise, its President, and its other Officers, Representatives and Agents, Defendants.

Civ. No. 9521.

Supreme Court of North Dakota.

March 22, 1979.

E. J. Rose, Bismarck, for plaintiffs and appellees.

Vogel Law Firm, Mandan, for defendants and appellants; argued by Benjamin C. Pulkrabek, Mandan.

ERICKSTAD, Chief Justice.

National Farmer's Organization, Inc. (NFO) appeals from a district court judgment entered on a jury verdict and an order denying its motion for a new trial or judgment notwithstanding the verdict. The judgment declared that certain membership agreements entered into between NFO and a group of farmers in McLean County were void and unenforceable. A jury had returned a verdict finding that NFO had not substantially performed the agreements. We affirm.

In 1968, a number of McLean County farmers (members) joined NFO. They all executed membership agreements that provided generally for the payment of membership dues and fees in exchange for certain collective bargaining services to be provided by NFO. In June 1976, a group of these members brought this action for declaratory judgment contending that the agreements were void and requesting that they be terminated. They alleged in their initial complaint that the agreements were void on two grounds: (1) the agreements themselves were void as against public policy, and (2) NFO had breached the agreements because it had not performed any affirmative act that contributed to the benefit or welfare of the members.

By amended summons and complaint dated December 14, 1976, additional plaintiffs were added and an additional cause of action was asserted, i. e. that the certificate of authority authorizing NFO to transact business in North Dakota was contrary to Section 146 of the North Dakota Constitution that prohibits price controls.

On February 4, 1977, NFO answered and counterclaimed against the members for membership dues and fees that were allegedly delinquent. The members subsequently moved for summary judgment on the grounds that the membership agreement violated public policy and was unconstitutional. The district court denied the motion, holding that "there is nothing in the membership agreement on its face which would authorize a court to void the same on the ground that it is illegal or unconscionable." The district court also stated, however, that the members' claim that they are receiving no benefits from their membership "amounts to a breach of contract or failure of the consideration for paying membership fees," and would be resolved by jury at a later date. NFO was subsequently granted a change of venue, and in the change of venue order, the district judge, on his own motion, ordered that the trial be bifurcated:

"1. The first issue to be tried will be the validity of the contract;

"2. If the defendant prevails on Issue Number 1, the second issue to be tried will be the amounts due and owing on the contracts involved."

Following a trial on the first issue, the jury returned a verdict for the members, finding that NFO had not substantially performed the agreements.[1] Judgment was

---

1. Although the district court's bifurcation order states that the first issue to be tried is the "validity of the contract," it appears clear that the issue is really one of substantial performance of the contract. The validity of the contract was established by the district court's denial of the members' motions regarding the public policy and constitutionality of the contract, and is not involved in this appeal. This interpretation of the bifurcation order is supported by the district court's instructions to the jury. The verdict form supplied to the jury states:

"We the jury duly empaneled and sworn to try the above entitled action, do find in favor of . . . [NFO or members] because it has [or has not] substantially performed the contract."

The jury instructions also defined what is meant by substantial performance.

subsequently entered, declaring the agreements void and unenforceable against the members. NFO's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, was denied, and this appeal followed.

The following issues are involved in this appeal:

(1) Was the district court's bifurcation order violated and if so, did this violation prejudice NFO?

(2) Was there sufficient evidence to support the jury's verdict?

(3) Does the failure of a number of the plaintiffs to testify in a declaratory judgment action dictate that a directed verdict be granted against them for failing to sustain their burden of proof?

■ NFO contends that the district court's bifurcation order was violated by the members' repeated reference to dues and that this violation prejudiced NFO so as to warrant the granting of a new trial. The members respond that because the membership agreement provided for membership dues and fees, the question of dues was relevant in a jury trial to determine whether or not the membership agreement was complied with.

NFO agrees that the district court has the authority pursuant to Rule 42(b), N.D. R.Civ.P., to order that a trial be bifurcated. Rule 42(b) provides:

"(b) *Separate Trials.* The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, and may direct a final judgment in accordance with the provisions of Rule 54(b)."

In this case, NFO counterclaimed against the members for membership dues and fees that were allegedly delinquent and the district court in its bifurcation order ordered a separate trial of NFO's counterclaim. The district court's decision to have separate trials on these issues was apparently moti-vated by a desire to save judicial time and resources, *i. e.* if NFO was found not to have substantially complied with the membership agreements, no further proceedings would be necessary to determine the question of dues and fees.

NFO contends, however, that the members violated this bifurcation order by their repeated reference to dues. The following excerpt from the direct examination of one of the members is an example of the testimony regarding dues that is complained of in this case.

"Q. Did you say you also paid some dues for '71?

"A. Yes, in July of '71. I think he was the secretary at that time—I forget his name—came to me and said I had to pay my membership.

"Q. Why?

"A. Because I had shipped—I had shipped grain or had shipped these cattle, and they said something about some kind of contract with NFO. I don't know, but it was never explained to me.

"Q. The only way you could get paid was if you paid your dues?

"A. The check would be held up unless my dues were paid.

"Q. Did you ever read your membership agreement?

"A. Not until after—not until the last couple of years, no.

"Q. Well, do you remember whether or not they held out a 1% charge on you on those cattle?

"MR. PULKRABEK: Your Honor, I am going to object again. We are here today to find out if the NFO complied with this contract, and we are not here to deal with check-offs or other contracts. They are not in Mr. Rose's pleadings. I would like to keep the trial to the issue. The thing that they are talking about is not material, not responsive.

"MR. ROSE: Yes, this actually is addressed to the issue.

"THE COURT: Is there anything about 1% in the contract?

"MR. ROSE: Yes. The agreement says, instead of dues, they will take 1%. [reading] When a marketing contract has been consummated by the NFO, covering a member's commodity, it shall provide that the processor check off 1% of the gross sales of the commodity for the NFO. This amount shall then become the member's dues. [end of reading]

"MR. PULKRABEK: Your Honor, as far as foundation, he is talking about a marketing contract he knew nothing about.

"THE COURT: He testified there was nothing taken out.

"MR. ROSE: That's all I asked him, your Honor.

"THE COURT: All right; the record will stand."

Article IX of the membership agreement deals with membership dues and fees and provides:

"ARTICLE IX—MEMBERSHIP DUES AND FEES

"Sec. 1–The membership dues of the N.F.O. shall be $5.00 per year, or such amount as may hereafter be established by the N.F.O., which shall be due and payable to the Treasurer of the member's county organization, at the date of making application for membership in the N.F.O., and yearly thereafter, as prescribed by the By-Laws of the organization.

"Sec. 2–A member shall be assessed $20.00 at the time of signing this contract and yearly thereafter by the N.F.O., which shall be used as directed by the Board of Directors to defray expenses incurred in carrying out a program of effectuating collective bargaining with the processor, and other activities in the best interest of the membership of the organization to be determined by the Board of Directors of the N.F.O.

"Sec. 3–When a marketing contract has been consummated by the N.F.O. covering a member's commodity, it shall provide that the processor check off 1% of the gross sales of the commodity for the N.F.O. This amount shall then become

the member's dues and shall replace the dues and fees otherwise prescribed above in Sections 1 and 2."

Some members also testified that they stopped paying their dues after they were raised.

"Q. In any event, you paid the first year's dues?

"A. Yes.

"Q. Did you pay anything after that?

"A. I believe I paid $25 the following year, but I am not even sure of that.

"Q. Do you know if the dues were raised the following year?

"A. Yeah.

"Q. 1975?

"A. No, the following year after the word from the national convention that they had raised it to $75."

Article XII of the membership agreement provides that the agreement may be modified as follows:

"ARTICLE XII—MODIFICATION

"It may become necessary during the life of this agreement to change or modify certain Articles, or make amendments to it. In the event this becomes necessary, it will require a two-thirds' vote of members in attendance at marketing area meetings called for that purpose, which notice has been given in accordance with Article VI, Section 2 of this agreement."

NFO argues that the testimony concerning the raising of dues is also beyond the bifurcation order. This contention is apparently based on the assumption that the dues were raised without following the membership agreement. NFO submits that had it known testimony regarding the raising of dues would be allowed, it would have had additional witnesses testify as to the procedure followed in the raising of the dues.

We fail to see how NFO was prejudiced by any of the testimony regarding dues. As membership dues and fees are part of the membership agreement and are consideration for the contract, they are relevant in determining if the agreement was complied with. The trial court apparently con-

strued the bifurcation order to mean that during the first phase of the trial, performance of the agreement by NFO would be determined, and during the second phase of the trial, the amount of dues owed would be determined, and that the order did not prohibit, during the first phase, references to the dues. We think this was a reasonable construction of that order. NFO has also failed to point out how the testimony concerning the raising of dues was prejudicial.

In reaching this conclusion, we note that counsel could have requested a continuance to prepare for the interjection of dues in the first phase of the trial and this was not done. He is therefore not in a strong position to complain at this stage of the proceedings. *See City of Fargo, Cass Cty. v. Candor Const.,* 260 N.W.2d 8, 9 (N.D.1977).

NFO also argues that there is insufficient evidence to support the jury's verdict that NFO had not substantially performed the membership agreement.

In *National Farmers Org'n, Inc. v. Lias,* 271 N.W.2d 751 (Iowa 1978), the Supreme Court of Iowa considered the terms of an identical NFO membership agreement. In *Lias,* NFO filed suit against one of its members alleging breach of contract. The member executed a membership agreement in October, 1971, on a printed form supplied by NFO. On December 10, 1971, and August 1, 1972, the member executed two additional documents entitled "Bill of Sale" by which the member agreed that NFO would enter into contracts to sell his corn for him. Under these bills of sale, the member committed to NFO a specific quantity of corn to be delivered at a certain time. NFO subsequently entered into sale agreements with Peavey Grain Company to sell a certain quantity of corn, including the

amount that the defendant had promised to deliver.

NFO made no effort to comply with Article VI of the membership agreement [2] which requires NFO to call a meeting of the NFO members in the defendant's marketing area for the purpose of voting on ratification of the contracts that NFO had negotiated with Peavey. Article VI also provides that sale contracts with the processor [Peavey] be approved by the NFO board of directors.

The member did not deliver his corn to Peavey or NFO under the contract and NFO was forced to satisfy the commitment from other sources.

The Iowa court found the ratification meeting of the membership agreement to be a condition precedent to the member's duty to perform pursuant to the bills of sale. Because the membership agreement required that contracts be ratified by the members and approved by the NFO board of directors, the member was found to have no legal obligation to deliver his corn to Peavey or NFO.

The significance of this case for our purposes is the apparent holding that the membership agreement must be complied with before the members are bound. *See also National Farmers Organization v. Smith,* 526 S.W.2d 759 (Tex.Civ.App.1975), in which a Texas Court of Appeals recognized that the terms of the membership agreement must be complied with by NFO before NFO could enforce the terms of the agreement applicable to the members.

■ In considering an appeal based on the allegation that the evidence does not justify the verdict, we look only to see if

---

2. "ARTICLE VI—RATIFICATION OF MARKETING CONTRACTS

"Sec. 1–No contract consummated with a processor shall be effective or binding until it has been ratified by a two thirds' vote of members in a marketing area who have signed contracts with the N.F.O. for the commodity, attending a meeting called for that purpose by the Marketing Area Bargaining Committee and has been approved by the Board of Directors of the N.F.O.

"Sec. 2A–If a marketing procedure is formulated for a marketing area, it will require the same ratification as contracts with processors.

"Sec. 3–It will be the responsibility of the Marketing Area Bargaining Committee to give at least ten days' notice to members who have signed marketing contracts, by first class mail, to the address shown on this contract, giving date, time and place of meetings on any issue requiring ratification of N.F.O. members."

substantial evidence exists to sustain the verdict. *Bellon v. Bellon,* 244 N.W.2d 227, 228 (N.D.1976). In *Waletzko v. Herdegen,* 226 N.W.2d 648, 653 (N.D.1975), we said:

> "As to the trial court's denial of . . . motion for judgment notwithstanding the verdict or in the alternative for a new trial, the credibility of the witnesses and the weight to be given their testimony are questions of fact for the jury to determine. In determining the sufficiency of the evidence to sustain the verdict of the jury, we must view the evidence in the light most favorable to the verdict. [Citations omitted.] Our review of the facts is limited to consideration of whether there is substantial evidence to sustain the verdict; if there is, we are bound by the verdict."

Also, when substantial evidence exists to sustain a jury verdict, we are bound by the verdict and the fact that contrary evidence was introduced is not material. *Bellon v. Bellon, supra* at 228.

■ NFO has not indicated with particularity how the evidence fails to support the verdict. We have reviewed the record in the light most favorable to the verdict and find substantial evidence upon which the jury could have found that NFO failed to comply with the terms of the membership agreement. Specifically, as in *National Farmers Org'n, Inc. v. Lias, supra,* there is ample evidence in the record to indicate that the ratification of marketing contracts was not performed pursuant to Article VI of the membership agreement.

■ NFO's remaining contention is that the failure of a number of the plaintiffs to testify in this case requires that a directed verdict be granted against them because they did not sustain their burden of proof. In order to fulfill this burden, NFO argues that either all the members should have testified or the case should have been brought as a class action pursuant to Rule 23, N.D.R.Civ.P.

The members brought the action as one for declaratory judgment pursuant to Chapter 32–23, N.D.C.C. Chapter 32–23 is a uniform law and was adopted in North Dakota in 1923. For a discussion of the history and application of the Act, *see Langer v. State,* 69 N.D. 129, 284 N.W. 238 (1939).

The following provisions of the Act appear relevant in this case.

> "Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and may obtain a declaration of rights, status, or other legal relations thereunder." § 32–23–02, N.D.C.C.

> "When a proceeding under this chapter involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending." § 32–23–09, N.D.C.C.

> "This chapter is remedial. Its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and it is to be construed and administered liberally." § 32–23–12, N.D.C.C.

We find NFO's contention that the case should have been brought as a class action, or, in the alternative, that all 99 plaintiffs should have testified to be untenable. In *State ex rel. St. Louis F. F. Ass'n Loc. No. 73 v. Stemmler,* 479 S.W.2d 456 (Mo.1972), a group of firemen brought an action for mandamus and for declaratory judgment against the city of St. Louis and the Civil Service Commission seeking to interpret and enforce an amendment to the city charter that required that firemen receive compensation comparable to the compensation received by the city's police officers.

The firemen sought to act individually and as representatives of the class of firemen. The trial court granted summary judgment in favor of the firemen, holding the charter amendment to be valid. The

Supreme Court of Missouri agreed, even though it determined that the case could not properly be maintained as a class action:

"Relators brought Count II for declaratory judgment in their individual capacities as well as an attempted class action. Individually, they seek a construction of the charter amendment and the ordinance passed thereunder, and they do state a claim under Rule 87 for declaratory relief. It, therefore, was proper for the trial court to construe the charter amendment and to hold it valid, even though the suit was not maintainable as a class action." 479 S.W.2d at 464.

The action was apparently not maintainable as a class action because the firemen not parties to the suit were not bound by the decision as members of a class. See 479 S.W.2d at 463.

Similarly, in *Rhodes v. Harder,* 211 Kan. 820, 508 P.2d 959 (1973), *aff'd* 212 Kan. 500, 512 P.2d 354 (1973), the Supreme Court of Kansas affirmed a summary judgment in favor of a group of doctors who sought declaratory relief and failed to prove that they qualified as a class for class action purposes.

The director of social welfare and the state board of social welfare had ordered that regular charges of certain providers of medical services to qualified recipients under Kansas' state program of medical assistance be reduced automatically by 25%. Fourteen doctors sought a declaratory judgment declaring that the order exceeded the defendants' statutory authority. Even though the case was not treated by the Kansas Supreme Court as a class action, the supreme court affirmed the trial court's award of summary judgment setting aside the administrative order which was issued pursuant to an administrative regulation which was held to be contrary to state law and thus void.

Our rule pertinent to this issue is Rule 23, N.D.R.Civ.P. Whether or not the action was maintainable as a class action is inconsequential, as it was not contended by the members to be so maintainable, and the trial court did not find it to be so.

In view of our conclusion that there is sufficient evidence in the record for the jury to conclude that NFO did not ratify the marketing contracts pursuant to Article VI of the membership agreement, we do not think that NFO was prejudiced by the failure of all 99 plaintiffs to testify to that effect. An effort was made by NFO at the trial through its national vice president to convince the jury that the clause requiring ratification of marketing contracts applies only to master contracts and not to contracts involved in this case, which NFO denominates supply contracts. There is nothing in the membership agreement indicating such a distinction, and the jury was apparently unimpressed with that contention.

The judgment of the district court is affirmed.

SAND, PAULSON, PEDERSON, and VANDE WALLE, JJ., concur.