Craig JOHNSON and Fargo National Bank & Trust Company, Trustee for Richard Fox Trust, Plaintiffs/Appellees,

v.

MONSANTO COMPANY, Defendant/Appellant.

Civ. No. 9861.

Supreme Court of North Dakota.

Feb. 24, 1981.

Wegner, Fraase & Nordeng, Fargo, for plaintiffs/appellees; argued by Craig E. Johnson, Fargo.

Pearce, Anderson & Durick, Bismarck, and Thysell, Gjevre, McLarnan, Hannaher, Vaa & Skatvold, Moorhead, Minn., and Harold A. Halgrimson, Fargo, for defendant/appellant; argued by Patrick W. Durick, Bismarck.

PAULSON, Justice.

Monsanto Company appeals from an order denying its motion for judgment notwithstanding the verdict, or for a new trial, or for remittitur. Craig Johnson brought an action against Monsanto based upon theories of express and implied warranties, negligence, and strict liability in tort because a herbicide produced and marketed by Monsanto damaged Johnson's hard red spring wheat crop. On January 19, 1980, a 6-member jury rendered a verdict, which stated that a herbicide produced and sold by Monsanto, Far-go Granulars, was in a defective condition, unreasonably dangerous to the wheat crop of Craig Johnson, and had caused damages which totaled $23,786.00. The jury determined that Monsanto's negligence contributed to 85 percent of the damages while Johnson's negligence contributed to 15 percent of the damages. On January 30, 1980, the District Court of Cass County entered judgment against Monsanto for $20,218.10, plus costs and disbursements of $38.00, for a total of $20,256.10. On July 11, 1980, the district court filed an order which denied Monsanto's motion for judgment notwithstanding the verdict, for a new trial, and for remittitur. The notice of appeal was filed on September 5, 1980. We reverse and remand.

Craig Johnson rented a half section of land located in Cass County from the Fargo National Bank and Trust Company, trustee for the Richard Fox Trust, in the fall of 1973. The land leased to Johnson was described as follows:

North Half of Section 12, Township 140 North, Range 55 West, Cass County, North Dakota

Johnson had experienced a problem with a weed known as wild oats and in the fall of 1976 he attended a meeting sponsored by the Buffalo Farm Supply Company at which a representative of Monsanto, Robert Moberg, gave instructions on applying a herbicide which controlled and eradicated wild oats. The herbicide bears the name "Far-go" and is marketed by Monsanto in both a liquid and a granular form. Johnson purchased 4000 pounds of the granular form of the herbicide at a cost of $1,967.10. In the fall of 1976 Johnson applied the herbicide in granular form to the 219.1-acre tract. A 60-acre tract adjoining the 219.1-acre tract was not treated with a herbicide for the control of wild oats. The liquid form of the herbicide was applied to the remaining 20-acre tract. Johnson applied approximately 3100 pounds of the granular form of the herbicide to the 219.1-acre tract. Moberg had instructed Johnson to apply the herbicide at a rate of from 12 to 15 pounds per acre. The application of the herbicide by Johnson consisted of 14.149 pounds per acre which complied with Moberg's instructions. When hard red spring wheat is planted, Monsanto recommends that the granular form of its herbicide be applied at a rate of 12.5 pounds per acre on brown soils and 15 pounds per acre on black soils.

The herbicide in its granular form does not activate unless the soil temperature exceeds 40° Fahrenheit and moisture exists in the soil. The granular herbicide was applied through a ground broadcast applicator and incorporated into the soil. Far-go is a pre-emergent herbicide which is placed in the soil in order to affect germination of a weed. The wild oat plant is forced to grow into a herbicide barrier and the herbicide affects the growth tissue on a wild oat plant. On April 27 and 28, 1977, Johnson seeded the entire half-section with hard red spring wheat and applied anhydrous ammonia at a rate of 90 pounds per acre, and 18–46–0 fertilizer at a rate of 60 pounds per acre. The hard red spring wheat which Johnson planted on the 219.1-acre tract was at the three-leaf stage of growth before the plants began deteriorating and dying. Representatives of Monsanto inspected Johnson's wheat crop on the 219.1-acre tract on May 25, 1977, and again on June 16, 1977. Monsanto's reports indicated that misapplication of its herbicide had caused Johnson's wheat plants to deteriorate and die. No damage occurred on the 20-acre tract on which the liquid form of the herbicide had been applied. Johnson destroyed the wheat crop and, in its place, planted 150 acres of sunflowers and 70 acres of flax. The sunflowers were treated with a herbicide known as Treflan, which controls a weed known as pigeon grass; and the flax was treated with a herbicide known as Eptam, which also controls the growth of pigeon grass. The sunflower crop was cultivated and then harvested, dried, and marketed. The sunflower crop yield was 1700 pounds per acre. The flax crop yield was 20 bushels per acre. The wheat planted on the 60-acre and 20-acre tracts which was not destroyed yielded 31.67 bushels per acre. The price of hard red spring wheat was $3.40 per bushel in the fall of 1977. At the same time, the price of sunflowers was 9¢ per pound and the price of flax was $5.00 per bushel.

Johnson incurred the following expenses in planting and destroying the wheat crop which had been treated with the granular herbicide:

| Operation | Cost |
| --- | --- |
| 1. Plowing the 220 acres of damaged wheat at $10 per acre | $ 2,200.00 |
| 2. Cultivating the 220 acres at $6 per acre | 1,320.00 |
| 3. Cost of Treflan herbicide for 150 acres of sunflowers at $5 per acre | 750.00 |
| 4. Applying Treflan to the 150 acres of sunflowers at $5 per acre | 750.00 |
| 5. Cost of Eptam herbicide for 70 acres of flax at $5 per acre | 350.00 |
| 6. Applying Eptam to the 70 acres of flax at $5 per acre | 350.00 |

| Operation | Cost |
|---|---|
| 7. Second application of Treflan to the sunflowers and Eptam to the flax | 1,100.00 |
| 8. Cost of sunflower seed for 150 acres at $6 per acre | 900.00 |
| 9. Cost of planting sunflowers to 150 acres at $7 per acre | 1,050.00 |
| 10. Cost of cultivating the sunflowers at $4 per acre | 600.00 |
| 11. Cost of harvesting the sunflowers at $8 per acre | 1,200.00 |
| 12. Drying the sunflowers at 35¢ per hundredweight | 892.50 |
| 13. Cost of flax seed for 70 acres at $11 per acre | 770.00 |
| 14. Cost of planting flax to 70 acres at $7 per acre | 490.00 |
| 15. Cost of swathing 70 acres of flax at $4 per acre | 280.00 |
| 16. Cost of harvesting the flax at 10¢ per. acre | 700.00 |
| Total expenses | $13,702.50 |

The amount which Johnson received when he sold the sunflowers and the flax is as follows:

| Yield | Price | Total |
|---|---|---|
| 1. 70 acres of flax at 20 bushels per acre | $5 per bushel | $ 7,000.00 |
| 2. 150 acres of sunflowers at 1700 pounds per acre | 9¢ per lb. | $22,950.00 |
| Total amount realized | | $29,950.00 |

The sunflowers were planted late and had a high moisture content when harvested and sold. Johnson incurred an additional dockage expense when he sold the sunflowers. The dockage expenses were computed as follows:

| Gross amount realized from the sale of sunflowers | Dockage percentage | Total |
|---|---|---|
| $22,950.00 | 14% | $3,213.00 |

The probable yield from the 219.1-acre tract of wheat which was destroyed can be computed as follows:

| Yield of wheat per acre on the 60-acre and 20-acre tracts | Number of total acres planted | Value of wheat per bushel |
|---|---|---|
| 31.67 bushels per acre | 219.1 acres | $3.40 per bushel for 6935 bushels |
| Total | | $23,579.00 |

The costs which would have been incurred if the wheat had been harvested but which costs were not incurred because the wheat was destroyed, were as follows:

| | | |
|---|---|---|
| 1. Costs of spraying at $2 per acre | | $ 438.00 |
| 2. Costs of swathing at $4 per acre | | 876.00 |
| 3. Costs of harvesting at $10 per acre | | 2,190.00 |
| 4. Costs of hauling the wheat to market at 5¢ per bushel for 6935 bushels of wheat as the probable yield | | 347.00 |
| Total | | $3,851.00 |

The only issue presented for our consideration is whether or not the district court committed error when it denied Monsanto's motions for a new trial or for remittitur.

The district court determined that the limited warranty and remedy provided by Monsanto in the event of damage resulting from use of the herbicide was unconscionable. Monsanto does not appeal from this ruling. The jury based its verdict on the theories of strict liability and negligence and found that Monsanto had not breached its express and implied warranties. Monsanto contends that the evidence presented at trial was not sufficient to sustain the jury's verdict which totaled $23,786 and determined that Monsanto was 85 percent negligent and Johnson was 15 percent negligent. Our review of the facts is limited to consideration of whether there is substantial evidence to sustain the verdict and, if substantial evidence exists, we are bound by the verdict. *Boe v. National Farmers Organization, Inc.*, 277 N.W.2d 291 (N.D. 1979); *Chewakin v. St. Vincent*, 275 N.W.2d 300 (N.D.1979). Where the evidence is in conflict and reasonable men might draw different conclusions on the evidence, we are bound by the verdict. *Belinskey v. Hansen*, 261 N.W.2d 390 (N.D.1977); *Welken v. Conley*, 252 N.W.2d 311 (N.D.1977). We must view the evidence in the light most favorable to the verdict. *Vallejo v. Jamestown College*, 244 N.W.2d 753 (N.D. 1976); *Kresel v. Giese*, 231 N.W.2d 780 (N.D.1975). Before the Supreme Court will interfere with an award of damages, the award must be so excessive or so inadequate as to be without support in evidence. *Vallejo v. Jamestown College, supra*. See also *Eriksen v. Boyer*, 225 N.W.2d 66 (N.D. 1974); *Skjonsby v. Ness*, 221 N.W.2d 70 (N.D.1974). A motion for a new trial on

the ground of insufficient evidence to sustain the verdict is directed to the sound discretion of the trial court and the court's action will not be disturbed on appeal in the absence of an abuse of discretion. *Olson v. A. W. Chesterton Co.*, 256 N.W.2d 530 (N.D. 1977); *Eakman v. Robb*, 237 N.W.2d 423 (N.D.1975).

▆▆▆▆ Our review of the record discloses that the district court abused its discretion when it denied Monsanto's motions for a new trial or for remittitur. In *Eichenberger v. Wilhelm*, 244 N.W.2d 691 (N.D.1976), we stated that the measure of damages for injury to or partial destruction of a growing crop is the difference between the value of the crop immediately before and after the injury or partial destruction. The general method of ascertaining damages in such cases is to examine the value at maturity which the probable crop would have had except for the injury, deduct the value which the injured crop actually had at maturity, and deduct further any reduction in amount and value of labor and expense attributable to the reduced yield. The total of the recoverable damages can be summarized as follows:

PROBABLE VALUE AT MATURITY

1. Probable yield per acre x total acres x value per bushel: 31.67 x 219 = 6935 bushels at $3.40 = $23,579

ACTUAL VALUE AT MATURITY

2. Actual value at maturity (crop was destroyed)

REDUCTION FOR EXPENSES NOT INCURRED

3. Costs of spraying ($438), costs of swathing ($876), costs of harvesting ($2,190), and costs of hauling the wheat to market ($347) = $3,851

PROBABLE VALUE AT MATURITY MINUS REDUCTION IN EXPENSES EQUALS:

4. $23,579 – $3,851 = $19,728

▆▆▆▆ Thus, $19,728 was the total of the damages which Johnson suffered by using the method for ascertaining damages to crops which was established in *Eichenberger v. Wilhelm*, 244 N.W.2d 691 (N.D.1976).[1] The injured party is limited to recovery of

the loss which he actually suffered and may not be placed in a better position than he would have occupied absent the injury. *Vallejo v. Jamestown College*, 244 N.W.2d 753 (N.D.1976). A plaintiff seeking to recover damages has a duty to minimize or mitigate his damages and may not recover for damages which could have been avoided by reasonable efforts under the existing circumstances. *Schneidt v. Absey Motors, Inc.*, 248 N.W.2d 792 (N.D.1976). Johnson planted sunflowers and flax on the 219.1-acre tract and realized $29,950 from these crops. The expenses incurred by Johnson in planting and marketing the sunflowers and flax totaled $13,702.50. Johnson incurred the additional expense of the dockage for high moisture content in the sunflowers, which totaled $3,213. The total of the net profit from the replacement crops can be summarized as follows:

GROSS
PROFIT EXPENSES DOCKAGE
$29,950 minus $13,702.50 minus $3,213 equals $13,034.50

▆▆▆▆ Under the instructions given by the court to the jury, the total damages suffered by Johnson would have been $6,693.50. This figure is arrived at by deducting the net profit realized from the replacement crops of sunflowers and flax ($13,034.50) from the damages to the wheat crop ($19,728.00). The jury verdict which awarded Johnson $20,218 was greatly in excess of the proper measure of damages. The determination of the amount of damages is in the province of the jury and rests largely in the discretion of the jury. *Froemke v. Hauff*, 147 N.W.2d 390 (N.D. 1966). Nevertheless, the jury must determine the compensation to which a party is entitled within reasonable limits, based upon the evidence. If those limits have been exceeded, it is the duty of the court to make a proper reduction or grant a new trial. *Vallejo v. Jamestown College, supra; Mevorah v. Goodman*, 68 N.W.2d 469 (N.D. 1955). See also Rule 59(b)(5), (6) of the North Dakota Rules of Civil Procedure. Johnson contends that the evidence was sufficient to justify the verdict and bases

1. *See also* Dobbs, Handbook on Law of Remedies, § 5.2, (2d Rep. 1976).

his contention on the fact that he had suffered damage when the proper rotation of his crop was interrupted in that he was forced to plant sunflowers and flax in 1977 instead of 1978. In addition, Johnson argues that the sunflowers depleted the moisture in the soil and created difficulties in preparing for the 1978 planting season because the stalks of the sunflowers had to be incorporated into the soil structure in order to create a proper soil texture. Finally, Johnson contends that the late planting season for the sunflowers resulted in a reduced yield of 1700 pounds per acre, while sunflowers which he had planted earlier yielded 2100 pounds per acre.

 While Monsanto raised no objection to Johnson's testimony on these items of damage, we believe that Johnson could not recover for these damages because of the rules applicable to special damages. Section 32–03–20, N.D.C.C., provides that the measure of damages for torts is the amount which will compensate the plaintiff for all of the detriment proximately caused by the injury. Compensatory damages are classified as being either general or special, direct or consequential. The additional damages for which Johnson argues he may recover, i. e., loss of moisture, loss of opportunity to plant sunflowers in 1978, costs of incorporating the sunflower stalks into the soil, are special damages. General damages are damages that generally flow from the wrong done by the defendant while special damages include items of loss which are peculiar to the plaintiffs and would not be expected to occur regularly to other plaintiffs in similar circumstances. Special damages such as those for which Johnson seeks to recover are subject to two limitations: (1) special damages must be proved to a reasonable degree of certainty; and (2) special damages are not recoverable if deemed to be too remote. While it is undoubtedly true that Monsanto caused these additional items of damage, the evidence presented at the trial consisted of the mere mention that such damages existed. We believe that Johnson's proof on these items of damage failed in two respects. The amount of these damages was not proved with a rea-

sonable degree of certainty, and the damages were too remote in nature to be compensable. We realize that the amount of the damages does not require proof to a degree of mathematical precision; however, the jury must have some factual basis for fixing damages. *United Power Ass'n v. Heley*, 277 N.W.2d 262 (N.D.1979); *Bumann v. Maurer*, 203 N.W.2d 434 (N.D.1972).

 The rule which denies the plaintiff a recovery for harm that he might reasonably have avoided is referred to as the avoidable consequences rule. The reason for the rule is the policy of avoiding economic waste. In this case, Johnson reduced his damages which resulted from the loss of the wheat crop by planting sunflowers and flax on the 219.1-acre tract. Johnson now claims that the yield of 1700 pounds per acre was less than he would have received if he had planted sunflowers in the subsequent year under more favorable conditions. As proof of this fact, Johnson demonstrated that an adjoining crop of sunflowers planted by him yielded 2100 pounds per acre in 1977. Johnson may not recover for the difference in the probable yield of sunflowers in 1978 on the 219.1-acre tract because he chose the method by which to reduce his damages and must abide by it. One who suffers property damage caused by the breach of duty of another may choose not to repair the property if the failure to take action is reasonable, without prejudice to his right to collect damages. *City of Wahpeton v. Drake-Henne, Inc.*, 228 N.W.2d 324 (N.D.1975). Secondly, an award of damages based upon the probable yield of the 1978 crop would require that the jury engage in speculation and conjecture because no evidence was presented which established the 1978 crop yield. The fact that Johnson's sunflower crop on other tracts of land yielded 2100 pounds per acre in 1977 is no indication that a similar or higher yield would have occurred in 1978. Finally, an award of damages based upon the probable yield of the sunflowers planted on the 219.1-acre tract in 1978 would afford Johnson with an additional recovery of damages because the injury at issue in the

case was the damage to his 1977 wheat crop and not the damage to his 1978 sunflower crop. Those damages would not flow from the injury, but rather from Johnson's choice of methods by which to reduce his damages. The law does not shift to the defendant the responsibility to pay damages for all of the consequences which flow from his wrongful act. In tort actions, the injured party is entitled to recover such damages as will compensate him for the injury received so far as it might reasonably have been expected to follow from the circumstances. See Dobbs, Handbook on Law of Remedies, §§ 3.3 and 3.6 (2d Rep. 1976).

Johnson next contends that the evidence was sufficient to sustain the verdict because he is entitled to recover the cost of the herbicide, the costs of incorporating the herbicide into the soil structure, and the costs of planting the wheat. The purpose of compensatory damages is to place the injured party in the position he would have occupied had the injury not occurred. *Eichenberger v. Wilhelm*, 244 N.W.2d 691 (N.D.1976). Judicial remedies include four major categories: (1) damage remedies; (2) restitutionary remedies; (3) coercive remedies; and (4) declaratory remedies. The items of expense for which Johnson seeks to recover did not flow from the injury caused by the defective herbicide but rather preceded that injury. These expenses were not incurred by reason of the tort. Johnson's claim would afford him a recovery for benefits which Monsanto received as a result of Johnson's labor and expenditures. As such, the restitution claim would force Monsanto to disgorge benefits such as the price for the herbicide, the costs of applying the herbicide, and the costs of incorporating it into the soil. Although Monsanto was "unjustly enriched" by the labor and expenditures of Johnson, he may not recover for these items of expense because he elected to pursue a damages remedy instead of a restitutionary remedy. The doctrine of election of remedies is applied when three elements are present: (1) the existence of two or more remedies; (2) inconsistency between the remedies; and (3) the choice of one remedy.

By pursuing a damages remedy, Johnson indicated his choice between inconsistent remedies. Damages and restitution are not concurring remedies for the same injury. *Anders v. Dakota Land and Development Co., Inc.*, 289 N.W.2d 161 (Minn.1980). Thus, Johnson may not recover for any "unjust enrichment" of Monsanto's because the judgment obtained by Johnson satisfied one remedy and foreclosed the pursuit of the other remedy.

Johnson also contends that he is entitled to recover the costs of discing the land, cultivating the land, applying fertilizer on the land, as well as the cost of the wheat seed. All of these costs were incurred as a part of Johnson's normal farming operations and are expenses which he would have incurred without regard to the damage caused by the defective herbicide. Because they form no part of the injury resulting from the defective herbicide produced and marketed by Monsanto, Johnson is not properly entitled to recovery for these expenses. Johnson's complaint initially requested relief for damages totaling $4,531.21 and was amended prior to the trial and after the jury had returned its verdict. *See* Rule 15(b), N.D.R.Civ.P. Monsanto does not contend that it is not liable for the injury to Johnson's crop and has not requested that we review the denial of its motion for judgment notwithstanding the verdict. However, Monsanto did object to the amendments to Johnson's complaint which increased the damages recoverable against Monsanto. Thus, Monsanto has not waived its right to object to the award of damages returned by the jury. Neither Johnson nor Monsanto raise on appeal the issue of whether or not comparative negligence applies in the context of actions based upon strict liability in tort. *See generally Busch v. Busch Const., Inc.*, 262 N.W.2d 377 (Minn.1977). The jury determined that Johnson's negligence contributed to 15 percent of the damage.

Unless raised in the pleadings, special damages are not ordinarily to be allowed. *Bumann v. Maurer*, 203 N.W.2d

434 (N.D.1972); Rule 9(g), N.D.R.Civ.P. Despite the fact that Johnson's pleadings did not specify which items of the damage were special damages, Monsanto raised no objection when Johnson testified on them. Despite these deficiencies in the manner in which special damages were raised and argued to the jury, we believe that Johnson did not establish these damages with the requisite degree of certainty and proximity. The trier of fact must be furnished data sufficient to determine damages without resort to mere speculation or conjecture. In addition, the items of damage which Johnson now claims justified the verdict of the jury do not fall within the perimeters of § 32–03–20, N.D.C.C. For these reasons, we believe that the damage award of the jury was excessive and without support in the evidence. The district court abused its discretion by denying Monsanto's motions for a new trial or for remittitur. Several items of damage existed on which the dollar value was not determined. These items included the cost of the fuel used by Johnson in planting the sunflowers and flax as well as the incidental expenses which accompany such farming operations. The jury is entitled to reasonable latitude on such matters, but it is doubtful that the expenditures could have justified the jury's verdict. The amount of $10,000 would give Johnson a more accurate sum for the damages he sustained. Therefore, we remand the case to the district court with instructions that unless Johnson agrees to a reduction of damages to $10,000 within ten days after the mandate is issued by this court, a new trial is granted only on the question of damages. Rule 59(b)(5), N.D.R.Civ.P.

For reasons stated in this opinion, the judgment of the district court is reversed and remanded with instructions.

ERICKSTAD, C. J., and VANDE WALLE and SAND, JJ., concur.

PEDERSON, Justice, concurring specially.

The money verdict here is being set aside because its size has no visible support in the evidence. If any verdict is to be upheld, in spite of the Seventh Amendment to the United States Constitution, it must have some support in the evidence. Accordingly, I must concur but I think it might be helpful to trial judges and trial lawyers if I express some additional concerns.

When a trial court is confronted with an attack against a jury verdict and applies a stricter review than this court applies on appeal, it appears to me that the result will be more and more appeals—and we already have more than we can adequately handle. I do not mean to imply that this court has taken a recent quick change in philosophical direction. This appellate trend is long-standing and nationwide. See Wright, "The Doubtful Omniscience of Appellate Courts," 44 Minn.L.Rev. 751 (1957).

In upholding the verdict in this case, the trial judge used statements that: (1) the evidence is "substantial enough," (2) he "cannot say that the verdict is ... flagrantly outrageous," and (3) the verdict is not "so extravagantly excessive, as to ... indicate that the jury was influenced by passion and prejudice."

Justice Paulson did not use those terms in authoring the majority opinion, but concluded that when the total of all items of damages testified to falls substantially below the jury verdict, it is fair to say that support for the verdict cannot be found in the evidence. I agree that this is the standard that follows precedent. I question, however, the propriety of an appellate court offer of remittitur, which in effect is a substitute verdict which, on its face, appears to have no more visible support in the evidence than the jury's verdict.